**H. SCOTT GURVEY**
**AMY GURVEY**
315 Highland Avenue
Upper Montclair, New Jersey 07043
(973) 655-0991
*Defendants pro se*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

|  |  | **DNJ CASE NO. 12702-2018 (SDW)** |
|---|---|---|
| M&T BANK S/B/M TO HUDSON CITY |  |  |
| SAVINGS BANK, | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, |  | **ESSEX VICINAGE** |
|  | : | CHANCERY DIVISION |
|  |  |  |
| vs. | : | DOCKET NO. F-014035-18 |

H. SCOTT GURVEY; MRS. H SCOTT
GURVEY, fictitious spouse of H. SCOTT
GURVEY; AMY GURVEY              :      CIVIL ACTION
Defendants.

:

**COUNTERCLAIM**                :      **ANSWER AND**
                                      **COUNTERCLAIMS**

H. SCOTT GURVEY; AMY GURVEY
Counterclaimants,

vs.

M&T BANK S/B/M TO HUDSON CITY
SAVINGS BANK; MARYANN NIEDWIEDZ;
SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP;
ELLIOT SMELTZER, PHILIP AIMUTIS JR.;
DOE PROCESS SERVER;
DOE PROCESS SERVER COMPANY
        Counter-Defendants

_____

**NOW COME H. SCOTT GURVEY** and **AMY GURVEY**, ("Defendants" and "Defendants-Counterclaimants" *pro se*) to state their Answer and Federal Counterclaims to the Complaint in Foreclosure of Plaintiff M&T Bank S/B/M Hudson City Savings Bank ("HCSB") answering Plaintiff's allegations as follows:

1.      That Plaintiff, M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK, is a corporation duly organized and existing pursuant to the laws of the State of New York, having its principal place of business at One Fountain Plaza, Buffalo, NY 14203.

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 1 and demand strict proof therein.

2.      Upon information and belief, the Defendants set forth in Exhibit "A" of this complaint reside at or have a place of business at the address set forth herein or, if a corporation, it was organized and is existing under and pursuant to the laws of the state set forth herein and are made defendants in this action in accordance with the interests set forth herein.

**ANSWER:** Defendants-Counterclaimants admit that they reside at the address set forth but lack sufficient knowledge to admit or deny that they are made defendants in this action in accordance with the interests set forth herein.

3.      That the United States of America, the People of the State of New Jersey, the State Tax Commission of the State of New Jersey, and all other agencies or instrumentalities of the Federal, State or a local government, if made defendants in this action, are named as defendants solely by reason of the matter set forth in Exhibit "A" of this complaint.

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 3.

4.     Upon information and belief, after due inquiry Plaintiff has been unable to ascertain the marital status of H. SCOTT GURVEY and if married the proper give name of his / her spouse and therefore MRS. H. SCOTT GURVEY, fictitious spouse of H. SCOTT GURVEY is set forth herein and made a party defendant hereto for any right, title or interest he / she may claim or have in and to the mortgaged premises as set forth in Exhibit "A" of this complaint.

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny to what extent Plaintiff has made a due inquiry, or any inquiry at all, to ascertain the allegations found in paragraph 4.

## FIRST COUNT
### (Foreclosure)

5.     That on or about April 29, 2002, Plaintiff's predecessor in interest, Hudson City Savings Bank ("Lender) (HSCB), made a Loan to ("Borrower(s)") H. SCOTT GURVEY in the original principal amount of $561,600.00 (the "Loan").

**ANSWER:** Defendants-Counterclaimants admit that Hudson City Savings Bank made a Loan to them on or about April 29, 2002 in the original principal amount of $561,600.00. Defendants-Counterclaimants lack sufficient information to admit or deny that Hudson City Savings Bank is predecessor in interest to Plaintiff and demand strict proof therein.

6.     To evidence its indebtedness (sic) under the Loan, on or about April 29, 2002, Borrower(s) / Obligor(s) H. SCOTT GURVEY duly executed and delivered to Lender / Obligee Hudson City Savings Bank a certain promissory Note in the original principal amount of $561,600.00, payable in monthly installments of principal and interest ("P&I") in the amount of

3

$3,689.31 to be paid on the first day of each and every month beginning June 1, 2002, and continuing to the first day of May 1, 2032 (sic), when the final payment was due and owing. The Note provided for interest at annual fixed rate of 6.875% per annum (sic) (the "Interest Rate").

**ANSWER:** Defendants-Counterclaimants admit the allegations of paragraph 6.

7.     That the Borrower(s) H. SCOTT GURVEY did in fact receive such loan in the principal amount as stated in the Note, and Plaintiff's predecessor in interest did advance said sum to said Borrower(s).

**ANSWER:** Defendants-Counterclaimants admit that they did receive such loan from Hudson City Savings Bank in the original principal amount as stated in the Note. Defendants-Counterclaimants lack sufficient information to admit or deny that Hudson City Savings Bank is predecessor in interest to Plaintiff and demand strict proof therein.

8.     To secure payment of the obligation under the Note, on or about April 29, 2002, the Borrow(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY executed and delivered a Mortgage and Security Instrument (the "Mortgage") in favor of Plaintiff's predecessor in interest, Hudson City Savings Bank, in the original principal amount of $561,600.00.

**ANSWER:** Defendants-Counterclaimants admit that they executed the Mortgage in favor of Hudson City Savings Bank in the original principal amount of $561,600.00. Defendants-Counterclaimants lack sufficient information to admit or deny that Hudson City Savings Bank is predecessor in interest to Plaintiff and demand strict proof therein.

9.     That the Mortgage was duly recorded on May 20, 2002, at the Essex County Register's Office, Book 8263, Page 818.

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 9 and demand strict proof therein.

10.     That the Mortgage executed and delivered by Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY **is a purchase money mortgage** (bold in the original).

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 10 and demand strict proof therein.

11.     That the Mortgage encumbers all that certain real property commonly known as 315 Highland Avenue, Montclair, New Jersey 07043 and also known as Lot(s) 1, Block 705 as shown on the Tax Map of the Township of Montclair, County of Essex, and State of New Jersey, including all improvements thereon, and more particularly described in Exhibit "B" annexed hereto and made part hereof ("the Mortgaged Property"). The mortgaged property is delineated by a means and bounds description and by municipal tax map block and lot reference in the aforementioned mortgage. The Mortgage includes the legal description as set forth in Exhibit "B".

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 11 and demand strict proof therein.

12.     That the Mortgage has not been assigned.

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 12 and demand strict proof therein.

13.     That M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK is the assignee and mortgagee of record and, thus holds all right, title, and interest and to the Note and to the Mortgage securing the debt therein.

5

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in paragraph 13 and demand strict proof therein.

14. That on or about April 10, 2003, Hudson City Savings Bank and Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY entered into a Loan Modification Agreement with the following terms:

    a. The "Maturity Date" did not change and remained May 1, 2032;

    b. The "New Principal Balance" of the load would be $555,756.43;

    c. An interest rate of 5.875% will begin to accrue on the New Principal Balance on May 1, 2003 and the first new monthly payment of principal and interest will amount to $3,329.36 beginning on June 1, 2003.

**ANSWER:** Defendants-Counterclaimants admit the allegations of paragraph 14.

15. That on or about December 17, 2009, Hudson City Savings Bank and Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY entered into a Loan Modification Agreement with the following terms:

    a. The "Maturity Date" did not change and remained May 1, 2032;

    b. The "New Principal Balance" of the loan would be $496,064.82;

    c. An interest rate of 5.250% will begin to accrue on the New Principal Balance on January 1, 2010 and the first new monthly payment of principal and interest will amount of $3,147.09 beginning on February 1, 2010. (sic)

**ANSWER:** Defendants-Counterclaimants admit the allegations of paragraph 15.

16.     That the Note and Mortgage ("Loan Documents") provide that if Borrower(s) fails to pay the full monthly payment on the date it is due, such failure shall constitute an event of default.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 16 and demand strict proof therein.

17.     That the Loan Documents further provide that if any sum payable under the Loan Documents is not paid in full within fifteen (15) calendar days after the date on which it is due, the Borrower(s) shall pay a late charge equal to 5.000% of the delinquent payment.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 17 and demand strict proof therein.

18.     That Loan Documents contained an agreement, that if any installment of principal and interest should remain unpaid, then after notice is given pursuant to the loan documents and any cure period has expired Lender / Plaintiff may demand the whole of the principal sum, together with all unpaid interest and advances made by the mortgagee, as immediately due.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 18 and demand strict proof therein.

19.     That in accordance with the Loan Documents, Plaintiff gave notice of their election to require Borrower(s) / Mortgagors(s) to pay the full amounts due under the mortgage loan, should Borrower(s) not pay the overdue amount within the prescribed period.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 19 and demand strict proof therein.

7

20.     That the Loan Documents further provide that upon occurrence of an event of default the Borrower(s) / Mortgagor(s) shall be liable for all costs incurred for collections, securing or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 20 and demand strict proof therein.

21.     The Borrower(s) defaulted under the terms of the Loan Documents on May 1, 2017 by, among other things, failing to pay the principal, interest and other payments when due.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 21 and demand strict proof therein.

22.     That there is now due, owing and payable to Plaintiff under the Note and Mortgage (i) $392,737.79 in principal; (ii) accrued and unpaid interest at the rate set forth in the Loan Documents; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Note and Mortgage including taxes, assessments, water rents, insurance premiums, escrow and/or other charges.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 22 and demand strict proof therein.

23.     To date, Borrower(s) has/have not paid the amounts due under the Note and Mortgage and accordingly, Plaintiff hereby elects to call due the entire amount secured by the Mortgage and accelerates and demands payment of all sums due under the Note and Mortgage.

8

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 23 that they "has/have not paid the amounts due under the Note and Mortgage...." Defendants-Counterclaimants lack sufficient information to admit or deny the allegations found in the remainder of paragraph 23 stating what Plaintiff has elected to do and demand strict proof therein.

24.     That in order to protect its security the Plaintiff has been, and/or may be compelled during the pendency of this action to pay local taxes, assessments, water rents, insurance premiums, F.H.A. or Veterans Administration premiums or charges, and other charges affecting the mortgaged premises, and the Plaintiffs requests that any sums paid by it for said purposes, together with interest thereon, should be added to the sum otherwise due and be deemed secured by the said mortgage and be adjudged a valid life on the mortgaged premises.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 24 and demand strict proof therein.

25.     That in accordance with the terms of the said debt instrument and mortgage in any action upon same, the Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY hereof agreed to pay Plaintiffs; reasonable attorneys' fees in connection with such action, which fees are deemed to be secured by said mortgage and are a lien on the premises prior to any right, title, claim or interest in, to or upon the mortgaged premises attaching or accruing to the lien of said mortgage.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 25 and demand strict proof therein.

9

26.     That Plaintiff shall not be deemed to have waived, released or changed the

election hereinbefore made by reason of the payment, after the date of the commencement of

this action, of any and all of the deficits mentioned herein, and any such election shall continue

and remain effective until the costs and disbursements of this action, and any and all future

defaults under the aforesaid Note and Mortgage occurring prior to the discontinuance of this

action are fully paid.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 26 and

demand strict proof therein.

27.     That if applicable, Plaintiff has compiled with the pre-filing notice requirements

of the Fair Foreclosure Act and other notices required under the mortgage documents or

required by law.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 27 and

demand strict proof therein.

28.     Plaintiff is in compliance with the Fair Foreclosure Act, N.J.S.A. § 2A:50-56, *et.*

*seq.*, mailed a notice of intention to foreclose to the debtors at least thirty-one (31) days prior

to the filing to this complaint.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 28 and

demand strict proof therein.

29.     The defendants whose names appear in Exhibit "A" hereof and the defendants

made a party hereto as set forth in paragraphs 3 and 4 hereof, if any, as the Plaintiff is informed

and believes, have a claim to of some interest in, or life upon said mortgage premises or some

10

part thereof, which claims, interest of lien, if any, accrued subsequently to the lien of the

Plaintiffs; aforesaid mortgage and is subordinate thereto.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 29 and

demand strict proof therein.

30.     Plaintiff does not seek a Writ of Possession to evict any occupant protected by

the New Jersey Anti-Eviction Act., N.J.S.A. § 2A:18-61.1 *et. seq*.

**ANSWER:** Defendants-Counterclaimants lack sufficient information to admit or deny the

allegations found in paragraph 30.

## WHEREFORE CLAUSE

The allegations in the "WHEREFORE" clause following Paragraph 30 constitute a request

for relief to which no response is required. To the extent a response is required, Defendants

deny that Plaintiff is entitled to any of the relief demanded in the Complaint, including the relief

requested in this paragraph, and respectfully requests that the Court enter judgment in

Defendants' favor and against Plaintiff, dismissing the Complaint in its entirety and with

prejudice, and such other and further relief as the Court deems just and proper.

## SECOND COUNT
### (Possession of Mortgaged Premises)

31.     Defendants repeat and incorporate the allegations contained in Paragraphs 1

through 30 above, inclusive of the First Count, and makes the same a part thereof as if the

same were set forth and requested at length herein.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 31 and

demand strict proof therein.

11

32.     By reason of the default under the terms of the Note and Mortgage referred to in the First Count of this complaint, the Plaintiff is entitled to possession of the premises described in paragraph 11 above, as further described in Exhibit "B" attached hereto. However, no possession is hereby sought against any tenant protected by provisions of the New Jersey Anti-Eviction Statute (N.J.S.A. § 2A:18-61.1, et. seq.).

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 32 and demand strict proof therein. Defendants lack sufficient information to know if Plaintiff seeks possession against any tenant protected by the New Jersey Anti-Eviction Statute (N.J.S.A. § 2A:18-61.1, et. seq.).

33.     That the Defendants names in "Exhibit "A" hereby incorporated in this Complaint have or may claim to have certain rights in the premises described in paragraph 11 above, and by reason thereof have deprived Plaintiff herein of the possession of the premises aforesaid.

**ANSWER:** Defendants-Counterclaimants deny the allegations found in paragraph 33 and demand strict proof therein.

## WHEREFORE CLAUSE

The allegations in the "WHEREFORE" clause following Paragraph 33 constitute a request for relief to which no response is required. To the extent a response is required, Defendants deny that Plaintiff is entitled to any of the relief demanded in the Complaint, including the relief requested in this paragraph, and respectfully requests that the Court enter judgment in Defendants' favor and against Plaintiff, dismissing the Complaint in its entirety and with prejudice, and grant such other and further relief in Defendants favor as the Court deems just and proper.

12

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's complaint based on a fraudulent declaration is barred by New Jersey Court Rule 4:30A, which embodies the entire controversy doctrine and requires Plaintiff and its debt collectors present "all aspects of a controversy in one legal proceeding." _Hobart Brothers v. National Union Fire Ins.,_ 354 N.J. Super. 229 (App. Div.) at 240, certify. denied, 175 N.J. (2002). Complaint filers Philip Amutis Jr. , Elliot "Emeltzer"[1], and principal Schiller, Knapp, Lefkowitz & Hertzel, LLP have sworn in their declaration under oath that there is no existing lawsuit between the parties, when a lawsuit between the parties has been in existence for 18 months - 2017-ESX-04337 pending before Judge Patrick J. Bartels, in Superior Court Essex Vicinage. This fact and Plaintiff's fraud upon the Defendants and the Court mandates immediate dismissal of the complaint with prejudice as a matter of law.

### THIRD AFFIRMATIVE DEFENSE

Complaint Filers Philip Aimutis Jr. and Schiller, Knapp, Lefkowitz & Hertzel, LLP ("SKLH"), appended a **fraudulent certification** pursuant to rule 4:5-1, stating that "_the matter in controversy is not the subject of any action pending in any other court...._" In fact, relevant claims are already before the Superior Court in the 2017 lawsuit including Plaintiff M&Ts breaches of Defendants' mortgage contract with Hudson City Savings Bank (HCSB) predecessor

---

[1] The Schiller, Knapp, Lefkowitz & Hertzel, LLP law firm only has an attorney listed with the name of Elliot "Smeltzer", not "Emeltzer",  that is the author's typed name on the harassing correspondence to Defendants.

in interest to Plaintiff M&T and M&T's breach of a modification of the contract.  See *Leisure Technology – Northeast v. Klingbeil Holding Co.,* 349 A 2d 96 (NJ Super. App. Div. 1975).  The instant foreclosure complaint also includes a separate fraudulent certification of diligent inquiry pursuant to file 1:5-6(c)(1)(E) and Rule 4:64-1(a)(2) and (a)(3) citing "MaryAnn Niedwiedz, Document Reviewer Specialist for M&T Bank, whose responsibilities and duties include reviewing default documents for accuracy." The fraudulent certifications mandate immediate dismissal of the complaint with prejudice and sanctions against Plaintiff and its debt collectors.

## FOURTH AFFIRMATIVE DEFENSE

Complaint filers Aimutis and  Schiller, Knapp, Lefkowitz and Hertzel, LLP, by their very filing this action with a fraudulent declaration in violation of NJ's Entire Controversy Rule, are as matter of federal law classified as  "debt collectors" who have engaged in separate and unlawful predatory acts to attempt to collect an debt in violation the Fair Debt Collection Practices Act, 15 USC §1692e ("FDCPA"). Defendants are entitled to be awarded federal damages, costs and sanctions, attorney's and further disciplinary action by this Federal Court against Plaintiff and Counter-defendant debt collectors as it deems appropriate.  *Slorp v. Lerner Sampson & Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014).

## FIFTH AFFIRMATIVE DEFENSE

Defendants' instant Answer and Counterclaims against Plaintiff and debt collectors include newly accrued federal statutory violations  including violations of the Racketeer Influenced and Corrupt Organizations Act, 18 USC §§1961-68, et seq. (RICO), 18 USC 1002(a)(2) for Plaintiff M&T's engaging in criminal fraud during an pending Federal Reserve investigation, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq.; the Fair Credit

14

Reporting Act ("FCRA") 15 U.S.C. §1681, et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C

§1601, et seq., the Real Estate Settlement Procedures Act, ("RESPA"), 12 U. S. C. §2601 et seq;

and violation of 18 USC§ 1001(a)(2), for lying in a Federal Reserve investigation [Federal

Reserve Investigation No. 180920-3491243] certain claims that are within the exclusive federal

jurisdiction of this Court.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

As detailed below in their Counterclaims herein, Plaintiff has breached Defendants'

mortgage contract with HCSB and a separate modification contract fully performed by Plaintiff

M&T. The full performance by Plaintiff of its obligations under the HCSB mortgage contract and

the modification are conditions precedent to its right to file for foreclosure, mandating

dismissal of the complaint with prejudice.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has engaged in separate violations of a criminal statute, 18 USC 1001 (a)(2)

before the Federal Reserve during Federal Reserve Investigation No. 180920-3491243, and for

15

violating a criminal statute and engaging in obstruction of justice in a coverup, Plaintiff has no

rights of any kind against these Defendants, the complaint must be dismissed with prejudice

and Plaintiff will remain liable for associated federal statutory violations, civil treble damages

and punitive damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff M&T engaged in a pattern of racketeering activity, aided and abetted Montclair

officers in tax fraud in violation of the Racketeer Influenced and Corrupt Organizations Act, 18

USC 1961-68, et seq. (RICO), and thereby tortiously interfered with Defendants' right to receive

significant tax refunds plus interest due from Montclair since 2009 that are matters pending in

litigation before the NJ Tax Court since 2009 and also lost a buyer for the subject home.

Plaintiff's complaint must be dismissed with prejudice and Defendants remain entitled to

recover RICO treble civil damages and punitive damages against Plaintiff for property-damage

losses of its tax refunds, interest, and loss of a buyer for their home in the amount of $865,000

which are claims properly heard before this Court. *Slorp v. Lerner, Sampson and Rothfuss*, 587

Fed. Appx. 249 (6th Cir.2014)

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff M&T aided and abetted Montclair Township's tax fraud and consumer fraud

upon these Defendants, and if Plaintiff alleges it suffered or sustained any loss, injury, damage

or detriment, the same was directly and proximately caused and contributed to by Plaintiff's

own contract breaches, misconduct, acts, omissions, and/or activities of Plaintiff and not by

Defendants.

16

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or reduced by its own negligence, mistake or fraud and violations and aiding and abetting Montclair Township officers in tax fraud and consumer fraud

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's fraud in its current declaration and failure to produce discoverable documents and answer interrogatories in the existing Superior Court lawsuit including failing to produce all communications with Montclair Township are separate acts of bad faith in furtherance of an illegal racketeering purpose, mandating dismissal of the complaint with prejudice. *Slorp v. Lerner Sampson & Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014)

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the failure to exercise reasonable care to mitigate its alleged damages, if any.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Without admitting any of the allegations in the Complaint, the injuries and/or damages alleged by Plaintiff were proximately caused by, occurred, and/or were contributed to by Plaintiff's own acts or failures to act.

## EITHGTEENTH AFFIRMATIVE DEFENSE

Plaintiff operated without notice to Defendants in breaching the separate tax escrow modification agreement created by promissory estoppel that also aided and abetted Montclair's tax fraud and consumer fraud against these Defendants. Plaintiff is not entitled to recover whatever monies Plaintiff alleges it advanced without the authorization of the NJ Tax Court, without any deficiency notice ever being entered by the Tax Court, and Plaintiff having

elected not to join the Tax Court litigation as required under the entire controversy rule, is now estopped from denying that it participated in racketeering activities.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred, in whole or in part, from recovering from Defendants on any of its claims because there is no causal relationship between any injury alleged to have been suffered and any act of Defendants.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff acquiesced in, consented to and/or ratified the acts and omissions alleged in the Complaint.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff has suffered no actual damages and any damages claims by Plaintiff in the Complaint are speculative and cannot be recovered from Defendants.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff has not suffered any damages as a result of any actions taken by Defendants and therefore Plaintiff is barred from asserting any cause of action against Defendants.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

If Plaintiff suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breaches, misconduct, fraud, acts, omissions, activities, carelessness, recklessness, negligence, and/or intention misconduct of others, and not by Defendants.

18

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The damages complained of were the result of the intervening actions and omissions of

others and were not proximately caused by the actions or omissions of Defendants.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff fails to show that any alleged acts or omissions of Defendants caused the

injuries or damages claimed by Plaintiff.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered or sustained any prejudice as a result of Defendants' purported

actions.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to supplement their affirmative defenses.

**WHEREFORE**, Defendants H. SCOTT GURVEY and AMY GURVEY respectfully request that

Plaintiff's Complaint in Foreclosure be dismissed in its entirety with prejudice.

## COUNTERCLAIMS

19

**H. SCOTT GURVEY**
**AMY GURVEY**
315 Highland Avenue
Upper Montclair, New Jersey 07043
(973) 655-0991
*Plaintiffs pro se*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

                               **DNJ CASE NO. 12702-2018 (SDW)**

M&T BANK S/B/M TO HUDSON CITY
SAVINGS BANK,                  :     SUPERIOR COURT OF NEW JERSEY
       Plaintiff,                ESSEX VICINAGE
                          :     CHANCERY DIVISION

       vs.                   :     DOCKET NO. F-014035-18

H. SCOTT GURVEY; MRS. H SCOTT
GURVEY, fictitious spouse of H. SCOTT
GURVEY; AMY GURVEY      :     CIVIL ACTION
       Defendants.
                          :

**COUNTERCLAIM**             :
                                **COUNTERCLAIMS**

H. SCOTT GURVEY; AMY GURVEY
       Counterclaimants,

       vs.

M&T BANK S/B/M TO HUDSON CITY
SAVINGS BANK; MARYANN NIEDWIEDZ;
SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP;
PHILIP AIMUTIS JR.; DOE PROCESS SERVER;
DOE PROCESS SERVER COMPANY
       Counter-Defendants

---

1

**H. SCOTT GURVEY** and **AMY R. GURVEY**, Defendants-Counterclaimants *pro se*, declare

to the truth of the following statements in support of their Counterclaims against Counter-

defendants M&T Bank, Philip Aimutis, Jr., Elliot Smeltzer, principal Schiller, Knapp Lefkowitz &

Hertzel, LLP, May Ann Niedwiedz and Plaintiff's other various agents, DOES I-X, Inclusive.

## I. PRELIMINARY STATEMENT

1.     On June 14, 2017, H. SCOTT GURVEY and AMY R. WEISSBROD GURVEY,

Defendant-Counterclaimants before this Court, initiated a Civil Action by Order to Show Cause

against M&T BANK in the Superior Court of New Jersey, Essex Vicinage, Law Division.

2.     The 2017 Superior Court action was assigned to the Hon. Patrick J. Bartels, J.S.C.,

Docket No. ESX-L-4337-17, service on Defendant therein/Plaintiff-Counter-defendant herein

M&T Bank was properly made, and the case remains pending today.  A motion is sub judice

before Superior Court to strike M&T's Answer for failing to comply with discovery, answer

interrogatories and produce otherwise discoverable documents for 18 months, including all

communications with the Montclair Township Tax Assessor.

3.     Gurvey 2017 NJ Superior Court lawsuit concerns Counter-defendant M&T's

systematic, intentionally false, predatory, abhorrent, and defamatory pre-foreclosure consumer

fraud, harassment, defamation, multiple breaches of Gurveys' 2002 Hudson City Savings Bank

(HCSB) mortgage contract for which Counter-defendant M&T claims to be successor in interest,

M&T's separate breach of a modification agreement thereto with Defendants created by

promissory estoppel based on M&T full performance and reliance by Defendants, plus M&T's

illegal credit reporting activities undertaken with malice that were intended to inflict and did

inflict severe property-related damages and emotional distress on Gurvey Defendants-Counterclaimants who are disabled senior citizens, World Trade Center victims, and New Jersey homeowners with an otherwise stellar reputation.

4.     Counter-Defendant M&T's unlawful acts and breaches of contract alleged by Gurveys in the existing Superior Court lawsuit and subsequent to the filing of that lawsuit, include, inter alia:

(i) Rejecting Counterclaimant's monthly principal and interest payments ("P&I") in breach of Counterclaimants' mortgage contract with HCSB to create a false pretext of "default" under their mortgage contract definition that did not exist;

(ii) Programming the M&T computers to reject Gurveys' monthly P&I payments at satellite branch officers and online in further breach of the HCSB mortgage contract;

(iii) Attempting refund Gurveys' already cashed monthly P&I payments in further breach of the mortgage contract (which Gurvey Counterclaimants refused to accept and never accepted);

(iv) Converting Gurveys' previous P&I payments already credited by Counter-defendant M&T to Plaintiff's P&I account to other improper and unlawful charges, assessments, fees, attorneys' fees, penalties and uses in additional breach of the HCSB mortgage contract, unanimous federal statutes and federal case law;

(v) Submitting false credit entries to credit card companies that Gurveys were in default under the terms of the HCSB mortgage contract which Gurveys are not [because the term "default" under the HCSB contract is expressly defined as the obligation to pay a monthly amount consisting of principal and interest only];

3

(vi) Engaging acts of unlawful coercion and duress by attempting to force Gurveys to agree to a modification of their mortgage contract when M&T takes subject to the HCSB contract only and cannot force Gurveys to sign a modification with mortgage terms and remedies more beneficial to M&T;

(vii) Engaging in violations of the Fair Credit Reporting Act, 15 USC §§1681, et seq. (FCRA);

(viii) Engaging in violations of the Truth in Lending Act, 15 USC §§1601 et seq. (TILA);

(ix) Engaging in violations of the Real Estate Settlement Procedures Act (RESPA), 12 USC §§2601, et seq.;

(x) Engaging in violations of the Racketeer Influenced and Corrupt Organizations Act, 18 USC 1961-68 ("RICO") by aiding and abetting officers Montclair officers' ongoing tax and consumer fraud against Defendants thereby interfering with Gurveys' overdue right to recover significant tax refunds, rebates plus interest unconditionally due Gurvey Counterclaimants since 2009 since State of NJ's forced 3-year quarantine of their home for asbestos contamination and remediation and power hazards that are issues that remain in litigation before the NJ Tax Court (A-000339-2011);

(xi) Engaging in criminal fraud before the Federal Reserve in violation of 18 USC 1001 (A)(2);

(xii) Engaging in other predatory acts including filing this frivolous foreclosure proceeding with a fraudulent that caused Montclair to renege on settlement negotiations before the Tax Court, further delayed the Tax Court proceeding and that lost Gurvey Counterclaimants a buyer for their home in July 2018 in the amount of $865,000, warranting

4

treble civil damages in favor of Gurvey Counterclaimants under RICO.  See, e.g., *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014).

5.      The added unlawful  act by Counter-defendants herein in filing the additional instant subsequent Complaint in Foreclosure before Superior Court with a fraudulent declaration authored by one Philip Amutis, Jr. of principal Schiller Knapp Lefkowitz and Hertzel, LLP in blatant violation of **R**. 4:30A, NJ's Entire Controversy Rule,  constitutes a further and separate unlawful and predatory act of harassment, with a new accrual date and for which Gurvey Counterclaimants are entitled to seek and do seek additional federal statutory damages under the Fair Debt Collection Practices Act,  15 USC §§1681, et seq., sanctions, punitive damages, and other relief from this Court.  *Slorp v. Lerner, Sampson and Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014)

6.      In addition, since the filing of the instant complaint, Counter-defendant M&T has engaged in violations of a criminal statute before the Federal Reserve after Federal Reserve opened an investigation 180920-3491243 against M&T based on the facts herein alleged.  By the very act of submitting fraudulent statement in response to said investigation, M&T has violated 18 USC §1001(a)(2), criminal acts for Defendants are also entitled to recover proximately caused civil damages before the Federal Court.

7.      On September 13, 2018, Defendant-Counterclaimants filed a complaint with the Federal Reserve Complaint Bureau, asking that the Federal Reserve, as the statutory regulator of M&T Bank, investigate various complaints concerning their HCSB mortgage agreement, the modifications thereto, and M&T's breaches thereof and bad faith false credit reporting in violation of the Fair Credit Reporting Act, 15 USC §1681, et seq.  Counterclaimants initiated this

action on the advice of the Office of the Controller of the Currency, which advised that the Federal Reserve was the proper regulatory body with administrative power over Counter-defendant M&T.

8.      The Consumer Financial Protection Bureau ("CFPB") on September 21, 2018, advised that the Federal Reserve had forwarded their complaint to CFPB and that it had opened an investigation, file number 180920-3491243. It also advised that it had forwarded the complaint to M&T Bank and asked for a response.

9.      On November 5, 2018, the CFPB notified Defendant-Counterclaimants that it was closing the file, having been informed by M&T Bank that the complaint had been filed by an "unauthorized third party" and that it would not respond to the CFPB inquiry.

10.     Defendant-Counterclaimant H. Scott Gurvey subsequently received a letter, dated November 5, 2018, written by Liz Coffey-Pratt, CAM Escalations Analyst, M&T Bank, identifying the alleged "unauthorized" person as Amy Gurvey.

11.     The statement by M&T is false. As the loan documents clearly show, the mortgage was issued to H. Scott Gurvey and Amy Gurvey, husband and wife, and the mortgage note lists both as borrowers. Amy Gurvey is therefore not an unauthorized third party, she is a first party and is entirely within her right to file the complaint with the CFPB, which she did on behalf of both Defendant-Counterclaimants.

12.     Based thereon, it is undisputed that on or about November 5, 2018, Plaintiff M&T BANK in a matter within the jurisdiction of the Federal Reserve and the Consumer Financial Protection Bureau ("CFPB"), knowingly and willfully made a materially false, fictitious and fraudulent statement and representation, to wit, that AMY GURVEY was an unauthorized

6

third party to the complaint she had filed with the CFPB seeking review of the actions of M&T BANK and that M&T BANK did not have to answer.

13.     This false statement is a violation of Title 18, United States Code, Section 1001(a)(2), the CFPB was notified accordingly.

14.     Said act demonstrates a coverup in furtherance of the unlawful purpose of an enterprise aimed at taking Defendants' home and aiding and abetting Montclair Township in further delaying repayments of refund after Montclair's insertion of ex parte fraudulent tax increases and overassessments into Defendants' tax board files during the forced 3-year asbestos quarantine period ordered by the State of New Jersey in 2009.

15.     In an separate matter, Counter-defendant M&T sent a further letter dated August 24, 2018, notifying Defendant-Counterclaimants as follows:  "Our records show that your hazard insurance expired…."  This allegation was also blatantly false.  M&T BANK had been notified that the insurance policy then in effect with Metropolitan Life would not be renewed when it came to the end of its term on October 27, 2018.

16.     Defendant-Counterclaimants, however, had immediately notified M&T BANK by telephone and facsimile and promised to supply information evidencing a new policy by the expiration date. Nonetheless, M&T BANK continued harassing Defendant-Counterclaimants with a series of telephone calls and written communications, stating that M&T BANK had arranged for insurance coverage with its own carrier, effective immediately, and was already charging Defendant-Counterclaimants for the cost of said insurance and other related expenses, prior to the effective date, which is per se unlawful.

7

17.     On or about October 2, 2018, Defendant-Counterclaimants furnished M&T BANK

with proof that a new insurance policy with Swyfft Insurance would take effect on October 27,

2018. M&T BANK responded with a letter dated October 12, 2018, acknowledging the new

policy and informing Defendant-Counterclaimants that the insurance M&T BANK had

unnecessarily purchased would be terminated but making it clear Defendant-Counterclaimants

would still be charged for the unnecessary insurance allegedly purchased by M&T BANK from

its captive supplier, which is also per se unlawful.

18.     These additional bad faith and predatory actions by M&T BANK resulted in

further fraudulent charges being assessed against Defendant-Counterclaimants, as well as costs

incurred by Defendant-Counterclaimants in rectifying M&T BANK's misconduct.

19.     As previously established in the existing Superior Court 2017 litigation, Gurvey

Counterclaimants have duly tendered their monthly mortgage payment due for the full P&I

payment in the amount of $3,147.09 religiously every month under their 2010 Hudson City

Savings Bank (HCSB) mortgage modification instrument.  M&T Bank's actionable and predatory

misconduct continues in breach of its HCSB mortgage obligations, including, without limitation:

(i) unlawful rejection of Defendant's monthly P&I payments both online and in satellite

branch offices in breach of Defendants' HCBS mortgage contract;

(ii) publicly claiming default that does not exist under the HCSB mortgage contract,

thereby engaging in  defamation, as a fraudulent pretext to unlawfully manufacture false

grounds to take Defendants' home;

(iii) programming its computers to reject Defendants' duly and timely tendered P&I

payments in further breach of the HCSB mortgage contract;

8

(iv) attempting refund of Defendant's P&I monthly payment cashed by Plaintiff (which Defendants did not accept) in further breach of the HCSB mortgage contract;

(v) unlawfully converting Defendants' cashed monthly payment to unearned and unlawful fees, costs, assessments and legal fees in violation both of the HCSB mortgage contract and federal statutes;

(vi) engaging in coercion and duress to attempt to force Gurveys to agree to a further modification of their mortgage contract with terms and default remedies more beneficial to Plaintiff M&T which is not allowed because M&T takes subject to the HCSB contract;

(vii) fraudulently declaring to third parties including credit reporting companies that the mortgage loan was in default when no default exists under the HCSB mortgage contract;

(viii) failing to remove the ongoing false entries after written notice of dispute, thereby violating the Fair Credit Reporting Act, 15 USC§§ 1682, et seq. (FCRA);

(ix) aiding and abetting Montclair Township's ongoing tax fraud and consumer fraud upon these Counterclaimants, and thereby interfering both with Gurveys' tax refund and interest rights and their ability to sell their remediated home;

(x) causing Counterclaimants to incur attorneys' fees and costs to defend this frivolous foreclosure proceeding premised on a fraudulent declaration (*Slorp v. Lerner Sampson and Rothfuss*, 587 Fed. Appx. 249 (6ᵗʰ Cir 2014) in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e, et seq.;

(xi) assessing fraudulent insurance, assessment, fees, legal fees, penalties and other charges to Counterclaimants' account; and

9

(xii) submitting false documents in a Federal Reserve investigation in violation of a criminal statute [18 USC§ 1002(a)(2) demonstrating acts in furtherance of an illegal purpose and a pattern of racketeering. (See Counts 16, 17, infra)].

20.     The actions of all Counter-defendants M&T, Philip Amutis, Jr. and principal Schiller, Knapp Lefkowitz and Hertzel, LLP, constitute violations of the following federal statutes and confer federal question jurisdiction over the instant Counterclaims: The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq.; the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681, et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C §1601, et seq., the Real Estate Settlement Procedures Act, ("RESPA"), 12 U. S. C. §2601 et seq; the Racketeer Influenced and Corrupt Organizations Act, 18 USC §§1961-68, et seq., 18 USC 1002(a)(2). This Court may also take pendent jurisdiction over state claims arising out of the same core of operative facts pursuant to 28 USC §1367 including Counterclaimant's claims for breaches the HCBS mortgage instrument and modification, violations of NJ's Consumer Fraud Act, NJSA 56:8.1-20, tortious interference, bad faith harassment, fraud, and attempting to coerce Defendants to sign a further modification with expanded foreclosure remedies that Counter-defendant M&T has no right to do.

21.     Counter-defendant M&T actually knew its filed credit reports concerning Gurvey Counterclaimants to be false and misleading when it submitted them to credit card agencies. Yet M&T filed the reports in reckless disregard of the truth or falsity of what they disseminated about Counterclaimants to third parties, and in violation of the FCRA, each such false entry in a new accrued violation, and Counter-defendant has since refused to withdraw its credit reports upon Counterclaimants' presentation of a formal credit agency dispute.

22.     M&T's false reports have been understood as defamatory by third parties, realtors and entities, lost Plaintiff a buyer for their home in 2018 in the amount of $865,000, are continuing to interfere with Plaintiffs' ability to sell their home at a fair price, and per se interfered with Defendants' right to be paid overdue tax refunds plus interest from Montclair Township that are still being unlawfully withheld.  The settlement negotiations that ensued before the Tax Court after M&T agreed to a modification and closed the optional escrow account were aborted  by Montclair officers. The subject of the extended NJ Tax Court litigation dates back to 2009 before both before the NJ Tax Board and NJ Tax Court[2] based on the asbestos contamination and forced quarantine of Plaintiffs' home in 2009 caused by others and Montclair Township fraudulent ex parte entries of overassessments and increases into Defendants' Tax Board files during the quarantine period and subsequently.

23.     Counterclaimants received a formal offer for the purchase of the subject property. That offer in the amount of $865,000 was withdrawn after Plaintiff M&T's fraudulent foreclosure filing, failure to withdraw the disputed claims on the Gurveys' credit reports, and Counter-defendant's breach of the fully performed separate modification agreement made with Counterclaimants that aided and abetting Montclair in withholding tax refunds due and a permanent tax abatement.

24.     M&T agreed and expressly represented by its attorney Aaron Bender, Esq. of Reed Smith, LLP, at the hearing before Hon. Patrick J. Bartels on July 31, 2017 (17 months ago) that M&T would refrain from continuing its false and fraudulent activities but in contumacious defiance of its averments, it continued to file false credit reports and to send false default

---

[2] Gurvey v. Montclair, Docket No. 000339-2011

11

notices to Counterclaimants. The egregious nature of M&T's activities is no better demonstrated than by the fact that whatever tax issue Plaintiff M&T has with Counterclaimants and Montclair Township, it had a viable and secure remedy at law to enter the Tax Court litigation as part of the entire controversy rule and was encouraged to do so. M&T, however, elected not to exercise those remedies, waived them, and must now be found to be estopped from taking a counter position. Because M&T elected instead to engage in illegal harassment and injurious activities against these reputable and disabled homeowners, culminating with this illegal Complaint in Foreclosure with a fraudulent declaration filed by debt collectors, Counterclaimants are also due punitive damages.

25.    Gurvey Counterclaims now reiterate their demand for mandatory dismissal of the foreclosure action claims with prejudice based on counter-defendants' fraud in a filing a false declaration and violation of entire controversy doctrine.

26.    In support of a separate countercomplaint, Defendants allege based on newly accrued unlawful acts by Counter-defendants treble damage civil damage claims, and special damages based on M&T and its contractors' defamation of Counterclaimants, continued breaches of Counterclaimants' 2002 HCSB mortgage contract, M&T's criminal fraud in lying to Federal Reserve investigators in violation of 18 USC 1001(a)(2), violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq.; the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681, et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C §1601, et seq., the Real Estate Settlement Procedures Act, ("RESPA"), 12 U. S. C. §2601 et seq; the Racketeer Influence and Corrupt Organizations Act, 18 USC §§1961, et seq., engaging in actionable fraud, violations of New Jersey's Consumer Fraud Act, NJSA 56:8-1-20, violation of NJ's Fair

Aimutis and Elliot Emeltzer (listed as Buffalo NY associate attorney under the name "Smeltzer", not "Emeltzer") and the amount in controversy exceeds $75,000.

## IV. THE PARTIES

28.    H. SCOTT GURVEY and AMY R. GURVEY, husband and wife, own and reside at 315 Highland Avenue, Montclair Township, Essex County, in the State of New Jersey (the "House").

29.    Hudson City Savings Bank was, on information and belief, a wholly owned, and the only, subsidiary of Hudson City Bancorp, Inc., a bank holding company which in 2002, had its primary place of business in Paramus, New Jersey and operating in New Jersey, New York and Connecticut.

30.    M&T BANK, on the information presented in its Complaint of Foreclosure "Complaint"), is a bank holding company with its primary place of business in Buffalo, New York. M&T BANK claims to be successor in interest to Hudson City Savings, having acquired Hudson City in 2012, although the acquisition did not close until 2015.

31.    MARYANN NIEDWIEDZ, on information presented in M&T's Complaint, is an agent of M&T with the title of "Document Reviewer Specialist for M&T Bank, whose responsibilities and duties include reviewing default documents for accuracy."

32.    SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP, a Latham New York partnership, on information present in M&T's Complaint, is a "Debt collector" by virtue of its filing of this unlawful proceeding and fraudulent declaration in support in violation of NJ statutes and the Entire Controversy Rule, NJ R. Ct. 4:30A, as defined by the federal Fair Debt Collection Practices

14

Act ("FDCPA"), 15 U.S.C. §1692e. _Slorp v. Lerner, Sampson & Rothfuss_, 587 Fed. Appx. 249 (6th Cir. 2014)

33.     PHILIP AIMUTIS JR., and Elliot Emeltzer a/k/a Smeltzer, on information present in M&T's Complaint are  Debt Collectors as defined by FDCPA and employees of Latham, New York partnership Schiller, Knapp, Lefkowitz & Hertel, LLP.

34.     DOE PROCESS SERVER and DOE PROCESS SERVER COMPANY are unknown agents of M&T, involved in M&T's improper service on its Complaint.

## V. FACTS OF THE CASE

35.     In April 2002, Gurvey Counterclaimants obtained a first mortgage on their property located at 315 Highland Avenue, Upper Montclair, Essex County, New Jersey 07043 from Hudson City Bank Savings Bank ("HCSB"), a subsidiary of Hudson City Bancorp, a bank holding company incorporated in the State of New Jersey in 1868 with headquarters in Paramus, New Jersey.  In 2002, Counterclaimants duly paid their required monthly payment consistently of principal and interest every month, and since April 2002, have a stellar reputation and come to this Court with clean hands.

36.     In November 2015, on information and belief, Hudson City Bancorp was acquired by M&T Bank Corporation, Inc, ("M&T") a public corporation incorporated in the State of New York in 1969 as a bank holding company, with its principal place of business in Buffalo, New York.

37.     M&T, claiming to be successor in interest to HCSB, became the holder of Counterclaimants' mortgage in due course and in possession of all documents in HCSB's files. M&T, as holder, did not and could not acquire any further rights against Counterclaimants than

15

those set forth in the HCSB mortgage contract it inherited; and could not coerce Defendants to sign a further modification agreement with expanded rights and remedies in favor of M&T.

38.    Counterclaimant's HCSB mortgage contract Para. 6 expressly defines the term "default" as the failure of mortgagee to pay a monthly payment of principal and interest ("P&I") by the 15th day of each month.  There is no other "default" possible under the contract. General contract law governs a party's breach.  Plaintiff M&T is not permitted to prevent Counterclaimants from performing their contractual obligations.  Here M&T is well aware that no default exists or ever existed.

39.    On May 5, 2009, Counterclaimants' home, permanent fixtures and personal property suffered significant loss and damage by initial direct physical loss, specifically devastating water damage and its effects due to water flowing through broken pipes within the plumbing system, specifically from within plaster ceilings and wainscot beneath the second floor master bathroom above the entrance foyer, vestibule, living room, dining room and kitchen in all structural rooms on the first floor of the premises below.

40.    Unlawful actions taken by Counterclaimants' insurer State Farm and its contractors without Defendants' consent or signed authorization resulted in the collapse of the ceilings in several rooms of the home.

41.    Subsequent environmental testing determined that the failure of the insurer and its contractors to comply with New Jersey containment statutes released friable asbestos, mold, toxic bacteria and ultrahazardous waste throughout the home, air ducts and surfaces on all three levels. State Farm and its contractors were found to have falsified the asbestos reports with a NY environmental firm, Olmsted Environmental of Garrison, NY and engaged in other

federal violations by withholding testing for airborne asbestos. The preliminary environmental experts report concluded that the home was unsafe for human habitation and in 2010, the NJ DEP sent the NJ Dept. of Labor, Workforce Asbestos Dept. to investigate. The State asbestos inspectors noticed Counterclaimants that State Farm was required to but failed to test the air ducts and instructed that Counterclaimants immediately perform this testing by an independent firm. In March, 2010, a specialized firm, EnviroVision of Fairfield, NJ found that the air ducts and HVAC were also 100% contaminated with friable asbestos.

42.     Counterclaimants reported the catastrophe to the Essex County Tax Board in 2009. Tax Board Commissioner Robert Gaccione held on October 26, 2009 that no final assessment would be entered for Counterclaimants' tax liability for 2009 until the Board's receipt of State Farm's then-pending environmental tests but agreed that even without the tests, Counterclaimants were due significant abatements based on the preliminary appraiser's report and Montclair Township's failure to remedy incessant power hazards to the grid servicing the home.

43.     In January 2010, the NJ State Dept. of Labor, Division of Workforce, Asbestos Control and Licensing, having reviewed the findings of State Farm's licensed sampling tester, Olmsted Environmental, inspected the home and informed Counterclaimants that State Farm's contractors had wrongfully disturbed the ceilings, and violated containment statutes for asbestos by failing to pretest the wet plaster for friable asbestos, contaminating the entire home, contents and HVAC systems. The State inspectors also said the home was unsafe, Counterclaimants must immediately evacuate, the home would be quarantined under

17

certification and could not be entered except by suited and licensed remediators until certification of safe asbestos levels.

44.     The asbestos and mold remediation required nearly 2 ½ years. During much of this time Counterclaimants lived in a motel room, primarily at the Residence Inn in West Orange, NJ, and were hospitalized several times with inhalation and exposure injuries including recurrent pleurisy, pneumonia, asthma, congestive bronchitis and staphylococcus in the bloodstream.  Nodules have since been discovered in Counterclaimant Amy Gurvey's left lung. The nodules have grown and require yearly lifelong surveillance by scan.  At the time they reach 7mm, Counterclaimant Amy Gurvey will be forced to undergo lung biopsy.

45.     Negotiations with State Farm concerning coverage and liability for this catastrophic incident continued. State Farm paid approximately $140,000 for water damage remediation and repair, asbestos removal and abatement, 4 months of 2 years of relocation expenses and minimal contents damages based on its strict liability for causing the damage. Counterclaimants asserted additional policy claims and in December 2010 filed suit in Superior Count of New Jersey, Law Division, Essex County, Gurvey v. State Farm et. al., Docket No. L-7554-10 (consolidated) and Docket No. L-10711-10 (Consolidated).  Because State Farm was instructed by the State Dept. of Banking and Insurance to pay strict liability asbestos damages for causing the plaster ceiling collapse and contamination of the home, State Farm unlawfully withheld the majority of claims due under the policy, that were required to be paid regardless of who caused the tortious contamination and devastation.  Gurvey homeowners were denied a jury trial on all covered claims in violation of the Seventh Amendment by the Superior Court , and the Supreme Court of New Jersey instructed that Defendants file an appeal as of right, that

18

is pending. [Case No. 080954]. State Farm and Olmsted Environment remains under investigation by the US Attorneys for New York and New Jersey for falsifying the asbestos testing failing to test the air ducts and HVAC and getting Defendants sick.

46.     Once Counterclaimants were made aware of the serious damage to their home, documents were sent both to the Essex County Tax Board and to Montclair Tax Assessor Joan M. Kozeniesky, requesting an abatement of property taxes for the entire quarantine period during which the house could not be occupied or sold.  It was then discovered that in defiance of Commissioner Gaccione's order on Tax Board on October 26, 2009, Montclair officers had unilaterally and fraudulent entered ex parte permanent tax overassessment and increases into Defendants' tax board files during the 3 years that the home was quarantined.  A subsequent certified appraiser's report determined that an assessment of $0 for the premises was proper during the entire forced quarantine period 2009-2012 entitling Counterclaimants to unconditional tax refunds plus interest from Montclair. The Appellate Division granted reversal of Tax Court's 2011 dismissal of ex parte tax increases and overassessment entered by Montclair Township and the remand litigation remains pending. (A-000339-2011)

47.     M&T Bank and its presumed predecessor-in-interest, Hudson City Savings Bank ("HCSB"), were both made acutely aware of and got copies of all relevant contamination reports regarding Counterclaimants' home including the Superior Court litigation files, the certified appraiser's report, and litigation files for the various actions before Essex County Tax Board and NJ Tax Court. M&T got the documents establishing that HCSB was in fact a co-payee on the August 2010 check issued by State Farm to pay, in part, for costs of airborne asbestos remediation.  HCSB refused to endorse that check, however, because State Farm's notation on

19

the check stub falsely referred to a claim for "water freezing" and not asbestos contamination. HCSB insisted the cleanup funds be placed in an escrow account it managed and from which it made all disbursements to asbestos remediation contractors. Counterclaimants cooperated fully with the bank's requests. This too is in M&T's files.[3]

48.     The amount of property tax owed for every year since 2009 is currently in dispute along with refunds plus interest past due, and pending before the Tax Court.

49.     Contending that several years' worth of property tax rebates remain owed plus interest, and that Montclair officers were improperly delaying adjudication of their appeals, Counterclaimants in good faith asked the Tax Court to set up an escrow account to receive their current payments.

50.     In 2016, having been informed of these facts, M&T agreed to close the **optional** tax escrow account associated with Counterclaimants' mortgage. M&T then did in fact close the optional escrow account and refunded Counterclaimants the funds on balance in that account creating a modification agreement by promissory estoppel. By so doing and fully performing its promise, M&T induced Counterclaimants' reliance and change of position in the Tax Court. The strategy was successful. Montclair officers then agreed to settlement talks with Counterclaimants before the Tax Court to pay the refunds due plus interest.

51.     M&T, having made and fully performed a promise on which Counterclaimants both relied and changed their position, became estopped from reopening the tax escrow account without Counterclaimants' authorization or consent. Its proper remedy was to join in

---

[3] HCSB produced copies of its files in answer to discovery demands by State Farm and Alan Industries in the previously cited case.

20

the Tax Court litigation under the entire controversy rule if it had any concern that its property interest could be at risk. However, because no deficiency notice was served by Montclair and could not be served without order of Tax Court, M&T had and could have no reasonable belief that its property interest was or could be at risk. This demonstrates further egregious, abhorrent and malicious harassing behavior on the part of M&T against these Counterclaimants when it decided it wanted to unilaterally revoke the promise it made and performed.

52. In early 2017, M&T then unlawfully reopened the tax escrow account without Counterclaimants' knowledge or consent that caused Montclair officers to cancel the settlement negotiations on the tax refunds and interest unconditionally due Counterclaimants.

53. Counterclaimants again communicated with M&T both telephonically and in writing, sending to Counter-defendant many additional documents pertaining to the Tax Court case, explaining that Montclair was engaging in frivolous litigation and delay tactics before Tax Court and informing M&T:

a) The amount of taxes owed and refunds due were both in dispute and the subject of litigation.

b) Montclair had not demanded payment of taxes accruing on the property and could not do so without leave of the Tax Court.

c) M&T's interest in the property was not threatened. The property had a debt to equity ratio of less than 50%; and only an order of Tax Court could result in a deficiency notice.

d) Counterclaimants demonstrated that Montclair owes them a refund of taxes paid with greater value than the amount outstanding. Counterclaimants cited case law arguing that outstanding tax amounts could be satisfied as a result of settlement or final determination.

21

e) Any action by Montclair to collect further taxes would be subject to Court approval, and Counterclaimants would satisfy any orders of the Court.

f) M&T as a party of interest was always welcome to join the litigation as a co-plaintiff and in fact was required to do so to comply with NJ's entire controversy rule.

54.     Having been apprised of these facts, knowing it had available remedies in Tax Court, and in breach of the separate enforceable contract made pursuant to promissory estoppel, M&T reopened the closed optional escrow account and now claims to have paid property taxes to Montclair. M&T's breach of the contract created by promissory estoppel caused Montclair to renege on settlement negotiations with Counterclaimants in Tax Court, fire two sets of attorneys and move for two adjournments, which were granted by Tax Court causing significant additional delays, costs expenses to Counterclaimants related to the real property. Ergo, by its misconduct and knowing it had alternative remedies, M&T de facto prejudiced and tortiously interfered with Counterclaimants' tax and interest refund rights and caused, to date, a further 20-month delay in the Tax Court proceedings, Counterclaimants' right to receive refunds plus interest and a permanent tax abatement and loss of a buyer for their home in the amount of $865,000. By such acts, Counter-defendant also aided and abetted tax fraud and consumer fraud by Montclair

55.     M&T subsequently admitted to Counterclaimants that it had reopened the escrow account to get its alleged tax advances back and that the reopened account now showed a negative balance. M&T demanded Counterclaimants begin paying into the account an amount in addition to their principal and interest payments to reimburse M&T for the taxes it claims to have paid to Montclair. When Counterclaimants refused to do so contending that

22

the payments were made in breach of contract and promissory estoppel, M&T, in further breach of NJ's trade laws, unlawfully began converting and redirecting Counterclaimants' duly paid principal and interest ("P&I") monthly payments to the newly opened and still optional escrow account, which M&T was not permitted to do both under the contract terms and under the unique circumstances here. No further modification or agreement was made between Counterclaimants and M&T to allow it to reopen the account particularly without notice to Gurveys.

56.     M&T also informed Counterclaimants that it had contracted, also without their knowledge or consent, for an appraisal of the property and improperly demanded that Counterclaimants pay a fee for the appraisal. This is an expense that M&T undertook for its own interest and Plaintiff's attempts to unlawfully charge Counterclaimants constitute a per se violation of NJ's Fair Foreclosure Act, NJSA 2A:50-53.

57.     M&T then improperly withheld that appraisal from Counterclaimants, although it unlawfully billed them for its alleged cost, until Counterclaimants demanded a copy. It showed a debt-to-equity ratio of approximately 44%, that is, the property was worth more than twice the outstating principal balance on the mortgage loan.

58.     Counterclaimants were presented with M&T's invoice detailing what Counter-defendant wanted Counterclaimants to pay for April 2017. Counterclaimants made the required monthly contractual payment of principal and interest only.

59.     Counterclaimants made their required P&I payment again in May and June 2017. M&T accepted and credited Counterclaimants' payments. However, M&T later informed Counterclaimants that it had unilaterally, in breach of the mortgage contract and NJ trade laws,

23

converted their payments toward the illegally-reopened escrow account. M&T advanced these new tax payments at its own risk while in breach of the modification contract after being apprised that Montclair owed Counterclaimants significantly more money than M&T had paid.

60.     M&T then sent Counterclaimants a letter falsely declaring their mortgage in default and threatened foreclosure when in fact, it is M&T and not Counterclaimants that is in breach of the contract. This letter, as all "letters" and "written communications" Counterclaimants received from M&T Bank, were sent via means of the United States Postal Service.

61.     Counterclaimants were not in default as they had tendered P&I for every month as they were obligated to do. M&T, however, caused the "default" it attributed to Counterclaimants by unlawfully rejecting, redirecting, converting and attempting to return Counterclaimants' P&I payments for defendant's own interest. *BJJ Corp v. Larry W. Corp.*, 183 NJ Super. 310, 443 A. 2d 1096 (Ch. Div. 1982).[4] There is case law supporting that M&T cannot recover the payments it allegedly made to Montclair after closing the optional escrow account in 2016 and inducing Counterclaimants' reliance and change of position in the Tax Court, and that such actions may be criminal.

62.     Under the mortgage agreement M&T allegedly inherited from HCSB, foreclosure or threatened foreclosure remedies against Counterclaimants exist *only in response to Counterclaimants' "default" as such term is defined under para 6B of Counterclaimants' HCSB*

---

[4] The BJJ Court also noted that there are criminal sanctions for failure to properly apply loan proceeds if a subordination is deemed specific and the proceeds and required to be applied for the benefit of the mortgaged property. Id at 325 n. 13, 443 A. 2d at 1104, see NJSA 2C:20-9 and NJSA 2A:29A-1

*mortgage contract*. The "monthly payment" is defined under the mortgage contract as "principal plus interest" (currently, the total sum of $3,147.09 per month[5]). "Default" is expressly defined under para. 6B of the contract as the failure to timely pay the "monthly payment". General contract law governs a party's breach.

63.     Because Counterclaimants have diligently paid and tendered, or attempted to tender, their required monthly payment every month since obtaining their mortgage in 2002, Counterclaimants have not been, are not now and cannot be in default under the HCSB mortgage instrument M&T inherited, which in turn means that foreclosure or threatened foreclosure is not an available remedy to M&T against Counterclaimants. The complaint therefore must be dismissed with prejudice.

64.     M&T's available remedy has always been to move to join in the Tax Court litigation under the entire controversy rule, to protect whatever interest it claims to have in allegedly paying taxes to Montclair at its own risk (that themselves may be unlawful). M&T, however, has nonetheless elected not to exhaust its available remedies, but instead to engage in deceptive, harassing, malicious and fraudulent pre-foreclosure predatory practices against Counterclaimants with intent to injure and frighten Counterclaimants and cause property-associated damages to Counterclaimants by deceptively attempting to claim that Counterclaimants are in default when they are not and to get premature foreclosure access to their home. M&T did not respond to document discovery requests or answer interrogatories in the Superior Court litigation, did not produce all relevant communications with Montclair

---

[5] The original mortgage note, dated April 29, 2002, called for a fixed-rate payment totaling $3,689.31. A loan modification agreement, dated December 17, 2009, set a new monthly payment of $3,147.09.

Township, and Montclair Township has defaulted on OPRA requests seeking production of all communications with M&T, lending credence to Counterclaimants' claim of M&T's aiding and abetting of Montclair's unilateral tax fraud and consumer fraud and RICO violations in furtherance of illegal racketeering purposes. (See Counts 16, 17, infra)

65.     M&T's unlawful activities warrant treble civil damages RICO, under NJ's Consumer Fraud Act, NJSA 58:8-1,20, are affecting Counterclaimants' physical and mental health and prejudicing their right to sell their already stigmatized home at the best price possible after years of remediation stigma and reconstruction costs that were never reimbursed by State Farm under the policy. M&T's unlawful attempts to falsely create an appearance or pretext of default by Counterclaimants when none exists constitute per se breaches of the covenant of good faith and fair dealing. *Barrows v. Chase Manhattan Morg. Corp.*, 465 F. Supp. 2d 347 (D. N.J. 2006) (*citing Seidenberg v. Summit Bank*, 348 NJ Super. 243, 791 A. 2d 1068, 1077 (App. Div. 2002)). An independent cause of action based upon breach of the covenant of good faith and fair dealing may be brought in three situations: (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract but consistent with the parties contractual expectations; (2) to allow redress for a contracting party's bad faith performance of an agreement when it is a pretext for the exercise of a contractual right to terminate even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance. *Ibid.*

66.     On July 6, 2017, M&T engaged in further unlawful acts. M&T sent Counterclaimants a letter and enclosed a check for $6,294.18, the letter saying "*This represents the recent payments that you sent us. These funds are being returned to you because they do*

26

*not represent the total amount due on the loan*." The amount is equivalent to two months of

principal and interest Counterclaimants duly paid on the mortgage loan in May and June 2017.

The letter continues, "*Please note that further action will be taken on your account if we do not

hear from you.*" Counterclaimants have canceled checks for the mortgage payments made and

never cashed M&T's attempted "refund" check meaning that M&T still has the monthly

payments it already credited and cannot lawfully claim a default for these months under the

terms of the mortgage contract as a matter of factual and legal impossibility. M&T sent that

check to Counterclaimants with calculated intent to harass and frighten Counterclaimants and

inflict emotional distress and desperation upon them. The sole reason is that M&T is aware it

may have made payments to Montclair it had no right to make, that it may have no right to

recover and by so doing, aided and abetted Montclair's continued tax fraud and consumer

fraud upon Counterclaimants. The clear intent, therefore, was to allow M&T to manufacture a

false and frivolous argument that Counterclaimants are in default for the months of May and

June 2017 under the contract *when they were not in default* so that M&T can be assured it will

get its elective alleged tax advances back after breaching a separate enforceable contract

created by promissory estoppel.  M&T has no right to engage in the acts it did because it did

not exhaust its otherwise available remedies.

67.     On July 13, 2017, Counterclaimant Amy Gurvey timely hand-delivered a check for

the monthly mortgage payment in the amount of $3,147.09 due for July 2017 to M&T's branch

in West Caldwell, NJ.  Tellers Fu-Mei Lee and Joshua Nathoo and later branch manager, Theresa

Saponara, refused to accept the check, stating the mortgage department had programmed the

computer to deny Counterclaimants' otherwise proper attempts to make payment. Mrs.

27

Saponara told Ms. Gurvey, however, that she agreed that the mortgage contract only requires a principal and interest payment unless a tax deficiency notice has been issued and that there was no record of such a notice having been issued by Montclair. Mrs. Saponara wished Counterclaimants luck in dealing with M&T and Montclair but said there was nothing more she could do and refused to give Counterclaimants the name of a senior bank executive who might help them resolve the matter. These interactions further demonstrate that M&T may have had conversations with Montclair that were fraudulently not disclosed, and which Counterclaimants must be entitled to discover in this lawsuit. Had Counterclaimants known of such conversation, they would have taken other action and moved to transfer the Tax Court litigation to the Law Division to compel joinder of M&T. In October, Montclair attorney Ira Karasick saw Counterclaimant Amy Gurvey in the street, smirked and asked her if "she was having trouble".

68.     Counterclaimants received from M&T a separate "NOTICE OF INTENTION TO ACCELERATE AND FORECLOSE" also dated July 6, 2017, which Plaintiffs got on July 20th, 2017 that Counterclaimants believe was mailed after the July 13, 2017 events in West Caldwell.  The letter states, "… *you are in default because you have failed to make your payments in accordance with the terms of your Promissory Note and Mortgage/Deed of Trust for the months of May 1, 2017 through today….. If you do not cure the default set forth above by August 5, 2017, then mortgage foreclosure proceedings may be commenced, which will cause you to lose your property*." In fact, there is no deed of trust in the mortgage documents defendant inherited from HCSB because none was generated by HCSB. This demonstrates M&T's further frivolous and malicious harassment in reckless disregard of the truth or falsity of its statements made to Counterclaimants and third parties.

28

69.     On August 14, 2017, Counterclaimant Scott Gurvey confirmed with M&T's West Caldwell Branch (the branch that rejected the July 2017 mortgage payment) that it would not accept a tendered check for the August principal and interest payment due on the mortgage.

70.     On August 15, 2017, during hearing in the Superior Court litigation, M&T's attorney refused that payment in Superior Court before Judge Bartels and, on the record, refused to accept from Counterclaimants their already tendered July and August 2017 payment checks (that defendant returned in another illegal notice). M&T's attorney also refused to take back M&T's attempted July refund check with the already credited May and June 2017 payments that Counterclaimants never cashed. These tactics are unlawful and constitute abhorrent harassment. All along, M&T still had a perfectly viable remedy, i.e., the option to join in the Tax Court litigation under NJ's Entire Controversy Rule and move that an escrow be opened in that court.

71.     On or about August 19, 2017, Counterclaimants received from M&T a statement dated August 16, 2017 indicating payment due of $42,929.53 and stating, "Your account is severely past due. We want to help you prevent further damage to your credit and avoid the possible loss of your home…. ***Please note, there is currently $2,002.43 in fees outstanding on your M&T mortgage account…. Our records indicate we have not received the most recent payments due on the above mortgage account. Your loan became delinquent on 05/02/2017. As of 08/16/17 the payments are 107 days delinquent on the mortgage loan account. As a person having an ownership interest in the property, if the mortgage account becomes delinquent you risk the loss of your property to foreclosure and additional fees related thereto, including but not limited to property evaluations, inspections, court costs, and attorney fees, all

29

of which are added to the mortgage loan account." A list of "recent Account History" shows
payments outstanding beginning with 05/01/17.

72.    On October 7, 2017, Counterclaimants received notifications from credit
monitoring services that contrary to M&T's attorney Aaron Bender's ongoing representations
and fraudulent omissions before Judge Bartels, a negative event had in fact been placed on
their credit record by M&T.

73.    Upon investigation, Counterclaimants discovered that M&T had fraudulently and
contrary to the mortgage contract and its promises, falsely reported to credit agencies that
their mortgage loan was four months in default.

74.    This malicious action by M&T Bank constitutes both defamation and actionable
fraud, and coupled with all defendants' other misconduct, constitutes a treble damage violation
of NJ's Consumer Fraud Act, NJSA 58:8-1,20, violations of the Fair Credit Reporting Act, 15 USC
§§1681 et seq., separate and apart from contemptuous breaches of the promises made to the
court and to Counterclaimants.  M&T's attorney, Aaron M. Bender of Reed Smith LLP,
responded to the request in court on July 31, 2017, by guaranteeing M&T would not undertake
further foreclosure or false reporting actions. By breaching these representations, M&T has
thereby engaged in additional acts of fraud, abuse of litigation privilege and FCRA violations
that along with M&T's aiding and abetting tax fraud by Montclair officers resulted in the further
loss of a buyer for Counterclaimants' home in the amount of $865,000.  This is a further
property-associated damage along with the delay fees and loss of the tax refunds and interest
before Tax Court that are recoverable as treble civil damages under RICO.

75. Counterclaimants since duly filed a dispute action with the credit reporting services. M&T responded by reaffirming its fraudulent statement that the required monthly payments had not been received. M&T's failure to correct its false report constitutes a further per se violation of 15 U.S.C. § 1681, separate acts of fraud, and warrants injunctive relief and punitive damages.

76. M&T's redirection and rejection of Counterclaimants' P&I payments are not authorized by the mortgage contract and constitute breach of contract, conversion and deceptive trade practices against these Counterclaimants in violation of NJ's trade practice laws and NJ's Consumer Fraud Act, NJSA 58:8-1,20. Such unprivileged acts entitle Counterclaimants to recover treble damages and attorneys' fees and costs in New Jersey. *Busse v. Homebank LLC,* 2009 WL 424278 (D. N. J. 2009); *In re O'Brien*, 423 B. R. 477 (Bankr. D. N. J. 2010), aff'd 2010 WL 470781 (D N. J. 2010); *Weinberg v. Sprint Corporation,* 173 NJ 233, 247 (2003) (citing *Cox v. Sears Roebuck & Co,* 138 NJ 2, 14, (1994); *D'Agostino v. Maldonado*, 36 A. 3d 1063; 209 NJ 231 (2012).

77. The consequences of M&T's illegal and malicious actions, false reports to credit agencies and foreclosure action in contempt of **R**. 4:30A, along with the falsely sworn certifications accompanying that illegal filing and lying to the Federal Reserve investigators, shock the conscience and meet the standard for an award of punitive damages. These abhorrent acts have adversely affecting Counterclaimants' already compromised physical and emotional health, financial well-being, credit ratings, reputation within the community, ability to sell their home (already with stigma), get permanent tax abatements, and to recover their tax refunds plus interest owing from Montclair since 2009. In July 2018 Counterclaimants lost a

buyer for their home in the amount of $865,000.  M&T is also intentionally causing

Counterclaimants severe emotional distress.

78.    In addition, by claiming to have advanced taxes direct to Montclair Township,

Counter-defendant has converted Counterclaimants' P&I payments, preventing

Counterclaimants' proper performance of its contract obligations, and tortiously interfering

with Counterclaimants' 2009-2013 tax refund and interest rights and ability to get a permanent

abatement after years of Montclair's fraudulent tax overassessments and increases.  Counter-

claimant has aided and abetted Montclair's ongoing ex parte tax fraud in the Gurveys' tax board

files.

79.    M&T has continued to refuse to accept Counterclaimants' monthly payments of

interest and principal, which have been offered by Counterclaimants every month to the

present either online, in person or both.

80.    M&T has also continued, each month, to falsely report to credit agencies that

Counterclaimants are in default.

81.    M&T sent Counterclaimants a letter dated May 25, 2018, stating that their

mortgage documents "have been forwarded to our attorney's office for foreclosure

proceedings."

82.    Counterclaimants next received a letter dated June 21, 2018 signed by Elliot E.

"Emeltzer"[6] of the law firm of Schiller, Knapp, Lefkowitz & Hertzel, LLP, of Lathan, New York,

---

[6] The Schiller, Knapp Lefkowitz & Hertzel, LLP law firm of Latham NY director has an attorney listed by the name of Elliot E. "Smeltzer", not "Emeltzer".

[falsely] stating that Plaintiffs are in default of their loan and demanding accelerated payment
of $476,435.55.

83.      Counterclaimants wrote Mr. Emeltzer informing him that they dispute
defendant's claim of default.

84.      On or about July 7, 2018, Counterclaimants' received a formal offer for the
purchase of the house for a consideration of $865,000.

85.      On July 12, 2018, Plaintiffs received letters from three different law firms,
soliciting Plaintiffs' business to assist with bankruptcy and foreclosure based on a new
foreclosure lawsuit filed by Counter-defendants demonstrating that the heinous acts of
defamation had been understood as disparaging by third parties.

86.      On July 17, 2018, Counterclaimants filed a Motion by Order to Show Cause
asking Judge Bartels to enjoin M&T BANK from filing, in violation of **R**. 4:30A, a separate
complaint against Counterclaimants.

87.      After they had filed that Motion, Counterclaimants went to the office of the clerk
of the Superior Court and discovered that the instant Complaint in Foreclosure had been filed
on July 5, 2018 by Counter-Defendant M&T BANK, represented by Counter-Defendant SCHILLER
with Counter-Defendant AIMUTIS JR. listed at attorney of record, in the Superior Court of New
Jersey, Chancery Division. The court had issued a summons on July 13, 2018, signed by Michelle
M. Smith, Clerk of the Superior Court.  The proceeding had a fraudulent declaration in support,
that being that there was no lawsuit existing between the parties, when the Superior Court
lawsuit, 2017-ESC-04337, with germane claims filed by Gurvey Plaintiff was already in existence
for more than a year.

33

88.    Even though Counterclaimants' had not been served, it was clear that this fraudulent Foreclosure filing had become public knowledge.

89.    On July 20, 2018, Counterclaimants were informed by their realtor that the offer to purchase the House had been withdrawn without explanation.

90.    On July 20, 2018, Counterclaimant AMY GURVEY was tending to plantings near the walkway in front of the home at 315 Highland which is the subject of these proceedings, when she was assaulted by a still unknown man who Counterclaimants have named DOE PROCESS SERVER for the purpose of this Counterclaim. They also name his unknown employer, if any, DOE PROCESS SERVER COMPANY.

91.    DOE PROCESS SERVER had apparently been hiding in hedges on the North end of Counterclaimant's property, approximately fifty feet from the street and twenty feet from the walkway.

92.    He leapt out of the hedges and moved toward AMY GURVEY in an aggressive and threatening manner and yelled something unintelligible.

93.    AMY GURVEY, frightened, backpedaled and fell over some plants, hitting her head on the concrete walkway, twisting her ankle, bruising her skin on her face and leaving a contusion on her leg.

94.    AMY GURVEY called for help, at which DOE PROCESS SERVER said, "Fuck you, you're served" and threw papers down on the grass at least ten feet from AMY GURVEY.

95.    Counterclaimant H. SCOTT GURVEY, hearing AMY GURVEY's call for help, came out from inside the house to see DOE PROCESS SERVER standing over his wife in a threatening manner.

34

96.     DOE PROCESS SERVER yelled at H. SCOTT GURVEY, "Who are you?" H. SCOTT

GURVEY replied, "You're on my property, get off!", at which DOE PROCESS SERVER threw more

papers on the ground and pulled out an object and pointed it at H. SCOTT GURVEY.

97.     H. SCOTT GURVEY was initially startled and feared the unknown assailant had

produced a firearm. Then he came to realize that DOE PROCESS SERVER was holding a mobile

device and apparently taking a photograph.

98.     H. SCOTT GURVEY took out his mobile telephone and took a picture of DOE

PROCESS SERVER, who then ran off in a northernly direction on Highland Avenue.

99.     AMY GURVEY, who is disabled as recognized by the Social Security

Administration and the Americans with Disabilities Act (42 U.S.C. § 12101), required several

weeks to recover from her physical injuries. She also suffered from panic attacks resulting from

this experience.

100.     On July 30, 2018, Judge Bartels held a hearing on Counterclaimants' Motion for

Injunctive relief.  M&T BANK, not having filed opposition papers, did not attend. Judge Bartels

expressed, on the record, disappointment both that M&T had failed to appear in response to

Counterclaimants' Motion and that it had filed a Complaint in Foreclosure in another court

based on a fraudulent declaration that falsely denied the existence of the proceeding before

him.

101.     Judge Bartels also expressed concern that a firm offer to purchase the subject

property of $865,000 for more than twice the outstanding principal value of the mortgage had

been withdrawn just after M&T filed its Foreclosure Complaint.

102.    Judge Bartels denied Counterclaimants' Motion for a restraining order as moot,

noting the language of **R**:52-2 does not allow him to enjoin an action already started; however,

Judge Bartels entertained Counterclaimants' motion to strike M&T's answer for failing to

comply with discovery, produce discoverable documents and answer interrogatories for 18

months.  Montclair has also refused to produce M&T documents in response to

Counterclaimants' Open Public Record Request, giving credence to Counterclaimants' damage

counts herein for aided and abetting tax fraud and RICO violations (Counts 16, 17, *infra*).

## VI. CAUSES OF ACTION

### COUNT 1

VIOLATION OF FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")
15 U.S.C. § 1692 et seq.

103.  Counterclaimants repeat, reiterate and reallege each and every allegation contained

in paragraphs numbered "1" through "102", inclusive, with the same force and effect as though

more fully set forth herein at length.

104.    The filing of the instant complaint in foreclosure with a fraudulent declaration by

Philip Amutis, Jr. principal of Schiller Knapp Lefkowitz & Hertzel, LLP, averring under oath that

"*there is no existing lawsuit between the parties*"  in violation of NJ's entire controversy rule,

constitutes a per se violation of the Fair Debt Collection Practices Act,  (FDCPA), 15 U.S.C.

§1692e, within the federal question jurisdiction of this Court.  *Slorp v. Lerner, Sampson &*

*Rothfuss*, 587 Fed. Appx. 249 (6th Cir 2014)

105.    Counter-Defendants' including debt collectors' conduct was willful, negligent or

both, making them jointly and severally  liable for violating NJ's laws, attempting to unlawfully

get access to and foreclose on Counterclaimant's home, collect unearned fees, interest

36

penalties, charges and expenses from Counterclaimants that were not authorized by any agreement or permitted by law, also in violation of 15 USC §1692f(1).

106.    Counter-Defendants' conduct was negligent or willful or both, rending them jointly and severally liable for failing to cease unlawful collection of an alleged debt and not providing proper verification of the debt to Counterclaimants prior to initiating a lawsuit, in violation of 15 U.S.C. §1692 g (b).

107.    As a result of the foregoing violations, Counter-Defendants are jointly and severally liable for actual damages, including general damages and special damages in an amount to be proven at trial pursuant to 15 U.S.C. §1692(k) a 1.

108.    As a result of the foregoing violations, Counter-Defendants including debt collectors are liable for actual damages, including general damages and special damages in an amount to be proven at trial pursuant to 15 U.S.C. §1692(k) a 2.

109.    Based on the allegations above and set forth further herein, Counter-Defendants including debt collectors violated 15 U.S.C. §1692d by engaging in conduct the natural and foreseeable consequence of which is to harass, oppress, and abuse Counterclaimants, without limitation, by continuing to pursue collection of disputed and unverified debt; and filing suit on an invalid debt, forcing Counterclaimants to defend against an invalid action, and further, and in addition thereto, knew or should have known that it has engaged in such conduct, and the said consequences thereof.

110.    Upon information and belief, Counter-Defendants and its debt collectors have also communicated false credit information to persons, including but not limited to credit reporting bureaus or agencies, with respect to Counterclaimants, which it actually knew or

37

should have known to be false – including without limitation allegations that Counterclaimant owed the purported debt which is the subject of this action.

111.    Upon information and belief, Counter-Defendants including debt collectors in violation of 15 U.S.C. §1692e (8) failed to communicate to Counterclaimants, other persons and entities, including credit bureaus, and persons yet to be determined, that Counterclaimants dispute the alleged debt.

112.    By reporting the account sued on to credit bureaus with false and misleading information regarding the nature and/or status of said alleged debt and other matters which Counter-Defendants including debt collectors knew or should have known would mislead, Counter-Defendants have violated 15 U.S.C. §1692e(2)(A), 1692e (8), 1692e (10) and 1692k(a)(3).

113.    The Fair Debt Collection Practices Act, §1692k, provides for actual damages, statutory damages up to one-thousand dollars ($1,000.00) per violation, costs of the action, and reasonable attorneys' fees.  Counterclaimants have suffered actual damages as the proximate and actual cause and result of the violations of the FDCPA by Counter-Defendants and its debt collectors to be determined at trial. Counter-Defendants and debt collectors owe to Counterclaimants for statutory damages as prescribed by § 1692k(a)(2)(A), actual damages pursuant to § 1692k(a)(1) in an amount to be determined at time of trial, and reasonable attorneys' fees and costs pursuant to §1692k(a)(3).

114.    Counterclaimants' damage and recovery rights against Counter-defendants  are separate and distinct from issues of the Counter-defendant's rights under the HCSB mortgage contract, are not germane to the issue of foreclosure and are in the federal  jurisdiction of this

38

Court and should be maintained by this Court as Counterclaimants' recoverable damage claims after dismissal with prejudice of the instant foreclosure complaint.

**WHEREFORE** for their First Count Counterclaimants in Counterclaim hereby pray this Court award actual damages under the Fair Debt Collection Practices Act, and for statutory damages as set forth above for each and every violation of the Fair Debt Collection Practices Act proven at the trial of this case, and reasonable attorneys' fees and costs thereunder.

## COUNT 2

### VIOLATION OF FEDERAL FAIR CREDIT REPORTING ACT ("FCRA") 15 U.S.C. § 1681 et seq.

115.    Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "114", inclusive, with the same force and effect as though more fully set forth herein at length.

116.    Counterclaimants are "consumers" as defined by 15 U.S.C. § 1681a(c) and "persons" as defined by 15 U.S.C. § 1681a(b).

117.    Counter-Defendant M&T BANK and its debt collectors individually qualify as "financial institutions" as defined by 15 U.S.C. § 1681(a(t)).

118.    15 U.S.C. § 1681s-2(a) provides as follows:

    (a) Duty of furnishers of information to provide accurate information.

        (1) Prohibition.

            (A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

            (B) Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any

39

consumer reporting agency if

> (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

> (ii) the information is, in fact, inaccurate.

> ...

(D) Definition. For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

(2) Duty to correct and update information. A person who--

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) Duty to provide notice of dispute. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such

40

information is disputed by the consumer.  ...."

119.    At all times relevant, Counter-Defendant M&T has been knowledgeable and acutely aware that the reports it was providing to the consumer credit reporting agencies as to Counterclaimants were false and misleading, constituting not only errors, but intentional errors in failing to report the current mortgage payment status of Counterclaimants.

120.    At all times relevant, Counter-Defendants as financial institution furnishers of information failed and refused to provide consumer credit reporting agencies with accurate, error-free, reports; in fact, the errors were intentional. Upon notice, Counter-defendant failed to correct and in fact re-affirmed the false report.

121.    15 U.S.C. § 1681 sets forth the liability of Counter-Defendants for their willful noncompliance with the Fair Credit Reporting Act ("FCRA"):

> a. Counter-Defendants are liable for actual damages from $100.00 to $1,000.00;
>
> b. Punitive damages as the Court may allow;
>
> c. Attorney's fees and costs; and
>
> d. Such other damages as shall be permitted.

122.    15 U.S.C. § 1681 sets forth the liability of Counter-Defendants for negligent noncompliance, as follows:

> a. Counter-Defendants are liable for actual damages; and
>
> b. Attorney's fees and costs;

123.    Counter-Defendants have violated 15 U.S.C. § 1681s-2 willfully.

124.    Counter-defendants' breaches of FCRA are independent and not germane to the instant complaint because they do not arise out of the HCSB mortgage contract and are therefore properly adjudicated by this Court under its federal question jurisdiction.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages under the Second Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendant pay compensatory damages, attorney's fees and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants to correct all false reporting on file with credit reporting agencies and to pay compensatory and punitive damages until such false reports have

been removed; and

C. Enjoining Counter-Defendant from conducting such violative activity in the future; and

D. Granting such other relief as the Court may deem appropriate.

## COUNT 3

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL OR ECONOMIC ADVANTAGE (TORTIOUS INTERFERENCE)

125.    Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "124", inclusive, with the same force and effect as though more fully set forth herein at length.

126.    To support a claim of intentional interference with contract  or economic advantage a plaintiff must prove: (1) a protectable interest deriving from a reasonable expectation of economic advantage involving the plaintiff's pursuit of monies owed or interference with a contractual right; (2) that the interference was inflicted intentionally by a third party and without justification; and (3) that the interference caused the loss of the prospective gain; and (4) the interference caused damages that can include delay in recovering damages. In the case of tortious interference with a contract, Plaintiff must prove that the interference was inflicted intentionally by a defendant who is not a party to the contract. *214 Corp. v. Casino Reinvestment Development Authority*, 280 NJ Super. 624, 656 A. 2d 70 (Law Div. 1994) citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 NJ 739, 751-752, 564 A. 2d 31 (1989); *Cedar Rider Trailer Sales, Inc. v. National Community Bank of NJ*.

127.    Here Counter-defendant M&T BANK, knowing that Counterclaimants were pursuing refunds plus interest and a permanent abatement unconditionally owed them against Montclair Township since 2009, promised to and closed the optional escrow account creating a

42

contract modification by promissory estoppel, agreed not to pay taxes to Montclair, induced Counterclaimants' reliance and change of position and then unlawfully revoked its promise, resumed payments to Montclair and reopened the escrow account without Counterclaimants' knowledge, and engaged in intentional harassment and malicious interference activities that have resulted in delay of the tax refunds plus interest before the NJ Tax Court,  and disparaging credit reports that reflect on Counterclaimants' character.

129.    In addition, Counter-Defendant's actions in filing false credit reports and in filing a fraudulent Complaint of Foreclosure, all on the public record, have cost Counterclaimants the sale of their House through a formal offer and at a price of $865,000, which is incidentally more than twice the outstanding principal Counter-Defendant's claim is due on the mortgage loan, plus caused Counterclaimants to suffer further delays in achieving their tax refunds and interest from Montclair officers, that based on Counter-defendants' torts continue to be unlawfully withheld.

130.    The above tortious interference damages are outside issues germane to Counter-defendant's rights against Counterclaimants under the HCSB mortgage contract because default is defined as the failure to pay the monthly payment of principal and interest only, and are therefore properly pursued before this Court under its pendent jurisdiction, 28 USC § 1367.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages under the Third Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants from conducting such violative activity in the

43

future, and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 4

### VIOLATION OF FEDERAL REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974 ("RESPA") 12 U.S.C. § 2601 et seq.

131.   Counterclaimants repeat, reiterate and reallege each and every allegation contained paragraphs numbered "1" through "130", inclusive, with the same force and effect as though more fully set forth herein at length.

132.   The mortgage loan made by HCSB to Counterclaimants is "covered" as defined by 12 CFR 1024.5(a).   Counter-Defendant M&T BANK, claiming to be successor in interest to HCSB, is also the "servicer" of the loan.

133.   A continuous stream of requests for information and clarification by Counterclaimants made to Counter-Defendant M&T BANK were ignored.   Failure to respond is a violation pursuant to 12 C.F.R. § 1024.36(c) which provides that "[w]ithin five days (excluding legal public holidays, Saturdays and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request."

134.   As detailed above, M&T BANK unilaterally made changes and adjustments to the optional escrow account it associated with Counterclaimants' mortgage account. These adjustments were made without justification or notice to Counterclaimants. These are violations of 12 C.F.R. § 1024.17, and 12 C.F.R. § 1024.34.

135.   M&T BANK's actions and failures noted herein constitute a pattern and practice of behavior in conscious disregard for Counterclaimants' rights under RESPA.   As a result of

44

M&T BANK's actions and failures Counterclaimants incurred actual damages, statutory

damages, costs and attorneys' fees.

136.    Counterclaimants' damage rights under RESPA are not germane to counter-

defendant's rights under the HCSB mortgage instrument and are properly pursued in this Court

under its federal question jurisdiction.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

under the Fourth Count of the Counter Complaint including, but not limited to:

A. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees
and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants from conducting such violative activity in the
future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 5

### VIOLATION OF FEDERAL TRUTH IN LENDING ACT ("TILA") 15 U.S.C. § 1601 et seq.

137.    Counterclaimants repeat, reiterate and reallege each and every allegation

contained paragraphs numbered "1" through "136", inclusive, with the same force and effect as

though more fully set forth herein at length.

138.    Counter-Defendants are "creditor" (s) as defined by TILA.  As creditors, TILA

requires Counter-Defendants to timely disclose all finance charges, other charges, and third-

party charges that may be imposed in connection with the load. Counter-Defendants also

required to make these disclosures clearly and conspicuously. TILA also requires Counter-

Defendant to accurately and fully disclose the terms of the legal obligation between the parties.

45

139.    Counter-Defendant violated TILA by *inter alia*: (i) adversely breaching and

changing the terms of the optional escrow account enforceable modification without

Counterclaimants' consent and demanding payments for expenditures not required under the

terms agreed to upon origination; and (ii) failing to provide proper notice, after origination, that

Counter-Defendant was amending the terms of the optional escrow account as described in the

relevant HCSB loan documents.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

under the Fifth Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees
and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants from conducting such violative activity in the
future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 6

### FRAUDULENT MISREPRESENTATION

140.    Counterclaimants repeat, reiterate and reallege each and every allegation

contained paragraphs numbered "1" through "139", inclusive, with the same force and effect as

though more fully set forth herein at length.

141.    A lender may have liability to a debtor for making untrue statements to the

debtor or to third parties. The elements of fraudulent misrepresentation are: (1) defendant

made a material misrepresentation of a presently existing or past fact (2) the knowledge of its

falsity; and (3) with the intent that that plaintiff or a third party would rely on it; (4) resulting in

reasonable reliance; (5) to the plaintiffs' detriment.  The elements of scienter, i.e., knowledge

of the falsity and intent to obtain an advantage by fraud and deceit are not essential to

46

establish that a misrepresentation constitutes actionable fraud. *State National Bank of El Paso v. Farah Mfg Co*., 678 SW2d 661 (Tex. App. 1984).

142.    The facts surrounding M&T's false filings with credit reporting agencies described above provide all the requisite elements to warrant recovery for fraudulent misrepresentation and not germane to Counter-defendants' rights under the HCSB mortgage instrument and should be maintained by this Court under its pendent jurisdiction, 28 USC 1367.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages, under the Sixth Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants from conducting such violative activity in the future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 7

### FRAUDULENT OMISSION

143.    Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "142", inclusive, with the same force and effect as though more fully set forth herein at length.

144.    The elements of a fraudulent omission claim are similar to elements of fraud by an affirmative misrepresentation. The deliberate omission or withholding of a material fact that should be disclosed is equivalent to a material misrepresentation (i.e., an affirmative false statement). In order to prevail on this claim, a debtor would have to show that lender acted knowingly with intent to deceive, debtor would have acted differently if it had known about the concealed fact, and debtor sustain damages as a result of the fraudulent concealment.

47

145.     The omissions here would include that Counter-Defendant had actually reported

false information about Counterclaimants to credit agencies and that Counter-Defendants

communicated with Montclair and had decided to renege on its promise, fully performed, to

close the optional tax escrow account and stop advancing monies in response to Montclair's tax

invoices.

146.     Counter-defendant's acts of fraudulent omission that caused Counterclaimants

severe damages to property, reputation and are not germane to the issue of Counter-

defendants' remedies under the HCSB mortgage transaction,  and are therefore properly

maintained by this Court under its pendent jurisdiction.  28 USC 1367.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

under the Seventh Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees

and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants from conducting such violative activity in the

future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 8

### BREACH OF CONTRACT/PROMISSORY ESTOPPEL

147.     Counterclaimants repeat, reiterate and reallege each and every allegation

contained in paragraphs numbered "1" through "146", inclusive, with the same force and effect

as though more fully set forth herein at length.

148.     For a valid breach of contract claim under NJ law, plaintiff must plead: (1) a

contract between the parties (2) a breach of that contract; (3) damages flowing therefrom; and

(4) that the party stating the claim has performed its own contractual obligation. Plaintiff is only

48

required to plead a loss which is shown by simply supplying an estimate of damages calculated with a reasonable degree of certainty.

149. A breach of contract claim will not be dismissed where the Counterclaimant alleges that the mortgagee accepted Counterclaimants' mortgage payments and deposited those funds; and made no mention at the time that payments were late or inadequate. Moreover, a breach of contract could conceivably be established if the Counterclaimant proves that there was a valid mortgage modification which Counter-Defendant breached, after fully performing the modification, inducing reliance by the Counterclaimants and then unilaterally revoking its promise. If there is no written modification, the Counter-Defendant made a promise, performed the promise and induced Counterclaimants' reliance and change of position, as occurred here, an enforceable contract will be implied, and the defendant will be deemed estopped from denying the modification. *Angers v. Pennymac Loan Services, LLP* 2014 WL 6668801 (D N. J. 2014); *Block v. Seneca Mortgage Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016).

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages, under the Eighth Count of the Complaint including, but not limited to:

A. Requiring that the Defendant pay compensatory damages for breaching the HCSB mortgage contract, the modification thereof created by promissory estoppel, attorney's fees and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Defendants from conducting such violative activity in the future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 9

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

150.    Counterclaimants repeat, reiterate and reallege each and every allegation

contained in paragraphs numbered "1" through "149", inclusive, with the same force and effect

as though more fully set forth herein at length.

151.    An independent cause of action based upon breach of the covenant of good faith

and fair dealing may be brought in three situations:  (1) to allow the inclusion of additional

terms and conditions not expressly set forth in the contract but consistent with the parties

contractual expectations; (2) to allow redress for a contracting party's bad faith performance of

an agreement when it is a pretext for the exercise of a contractual right to terminate even

where the defendant has not breached any express term; and (3) to rectify a party's unfair

exercise of discretion regarding its contract performance. *Barrows v. Chase Manhattan Morg.*

*Corp.*, 465 F. Supp. 2d 347 (D. N.J. 2006) citing *Seidenberg v. Summit Bank*, 348 NJ Super. 243,

791 A. 2d 1068, 1077 (App. Div. 2002); *Angers v. Pennymac Loan Services, LLP,* 2014 WL

6668801 (D.N. J. 2014).

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

under the Ninth Count of the Complaint including, but not limited to:

A. Requiring that the Defendant pay compensatory damages, attorney's fees and costs

and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Defendants from conducting such violative activity in the future, and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 10

### IMPROPER DISBURSEMENT OF LOAN PAYMENTS

152.    Counterclaimants repeat, reiterate and reallege each and every allegation
contained in paragraphs numbered "1" through "151", inclusive, with the same force and effect
as though more fully set forth herein at length.

153.    In *BJI Corp. v. Larry W. Corp* ,183 NJ Super. 310, 443 A. 2d 1096 (Ch. Div. 1982),
the court held that if a general subordination clause is not shown to have been bargained for
and understood or if the parties have not made an otherwise binding agreement concerning
the loan payments which in this case exists), the clause will be presumed to be "specific", that
is, to require implicitly that the loan payments be allocated to payments as provided for in the
contract.

154.    Insofar as it was shown, as here, that the mortgage monies have been diverted
beyond the agreed scope of agreed use, then the subordination clause itself will be limited to
the intent of the parties. The court also noted in BJI Corp that there are criminal sanctions for
failure to properly apply loan proceeds once subordination is deemed specific, a specific
agreement was made between the parties, and the proceeds are thereby required to be
applied as agreed. In the instant case, Counter-Defendant M&T BANK inherited a contract from
HCSB and has been unlawfully trying to expand its rights which it cannot do.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,
under the Tenth Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendant pay compensatory damages, attorney's fees
and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-defendants from conducting such violative activity in the

51

future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 11

### CONVERSION OF LOAN PAYMENTS N.J.S.A. 12A:3-240

155.   Counterclaimants repeat, reiterate and reallege each and every allegation

contained in paragraphs numbered "1" through "154", inclusive, with the same force and effect

as though more fully set forth herein at length.

156.   In *Sovereign Bank v. United National Bank*, 359 NJ Super. 534, 821 A. 2d 87 (App.

Div. 2003), certification denied, 177 NJ 489, 828 A. 2d 917 (2003), to state a cause of action for

conversion, the plaintiff must show that defendant unlawfully took possession of plaintiff's

property, exercised control over plaintiffs' P&I payment knowing such control was wrongful,

and converted the property for defendant's own use or otherwise used plaintiffs' property for

defendant's own benefit.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

under the Eleventh Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendant pay compensatory damages, attorney's fees

and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter- Defendants from conducting such violative activity in the

future, and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 12

### CONSUMER FRAUD ACT N.J.S.A. 58:8-1, 20 ("CFA")

157.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in

paragraphs numbered "1" through "156", inclusive, with the same force and effect as though

more fully set forth herein at length.

158.    A violation of the CFA requires a showing of (1) and unlawful practice; (2) an

ascertainable loss; and (3) a causal nexus between the unlawful conduct and the ascertainable

loss. As to an unlawful practice, the CFA prohibits the use of any unconscionable commercial

practice, deception, false pretense, false promise, misrepresentation or the known

concealment, suppression or omission of any material fact with intent that others rely upon it...

in connection with the sale or activities of persons or with the subsequent performance of such

person. CFA NJSA 56:8-2 provides: "The act, use or employment by any person of any

unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing concealment suppression or omission of any material fact

with intent that others rely upon such concealment, suppression or omission in connection with

the sale or advertisement of any merchandise or real estate, or with the subsequent

performance of such person as aforesaid, whether or not any person has in fact been misled,

deceived or damaged thereby is declared to be an unlawful practice...." Under the CFA, a

person who suffers any ascertainable loss as a result of the use of the unconscionable

commercial practice may bring an action for treble damages, reasonable attorney fees and

costs of suit. NJSA 56:8-19. *D'Angelo v. Ocwen Loan Servicing LLC*, 2017 WL 712781, 10 NJ

Super. CT. App. Div. 2017) (on point - reversing dismissal of count where count incorporated

the factual allegations that defendants engaged in a course of deceitful and unconscionable

conduct in their efforts to enforce and collect sums allegedly due under plaintiffs' loan including

failing to accept and credit plaintiffs' mortgage payments in order to falsely claim he was in

default and demanding payments for premiums and other purported costs that were improper.

53

It was held that these acts state a cause of action under the CFA even though plaintiff failed to

allege facts showing improper loan collection efforts. *Gonzalez v. Wilshire Credit Corp.* 207 NJ

557, 25 A. 3d 1103 (2011), *Beals v. Bank of America NA*, 2011 WL 5415174 (D. N. J. 2011);

*Whittingham v. Amended Mortg. Elec. Registration Services, Inc.,* 2007 WL 1456196

(D.NJ 2007).

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

under the Twelfth Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-defendant pay compensatory damages, attorney's fees

and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-defendants from conducting such violative activity in the

future, and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 13

### DEFAMATION

159.    Countercomplainants repeat, reiterate and reallege each and every allegation

contained in paragraphs numbered "1" through "158", inclusive, with the same force and effect

as though more fully set forth herein at length.

160.    A statement or entry meets the definition of defamation if it is 1) public; 2) false;

3) more than an opinion; 4) causes actual injury and 5) was not made under privilege. In some

jurisdictions, the statement must be understood by a third person or entity as disparaging and

cause damage to the plaintiff's reputation, as occurred here.

161.    Here, M&T BANK knowingly and recklessly filed false reports and written entries

credit agencies and, when given the opportunity to correct these false statements, actively

elected instead to reaffirm them, causing monetary harm to Counterclaimants as well as

54

causing damage to their reputation in the community, incalculable damage to future business and employment opportunities and emotional distress.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages, under the Thirteenth Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-defendant pay compensatory damages, attorney's fees and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-defendants from conducting such violative activity in the future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 14

ASSAULT N. J. S. A. § 2C:12-1 AND TRESSPASS N. J. S. A. § 2C:18-3b

162. Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "161", inclusive, with the same force and effect as though more fully set forth herein at length.

163. Counter-Defendants by their agent DOE PROCESS SERVER and under the direction of DOE PROCESS SERVER COMPANY did enter onto the property of Counterclaimants and remain on the property after being warned by Counterclaimants in violation of N.J.S.A. § 2C:18-3b.

164. Counter-Defendants by their agent DOE PROCESS SERVER and under the direction of DOE PROCESS SERVER COMPANY did assault Counterclaimant AMY GURVEY in violation of N.J.S.A. § 2C:12-1.

165. These violations caused physical and emotional harm to AMY GURVEY.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages, under the Fourteenth Count of the Countercomplaint including, but not limited to:

A. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees and costs and experts' fees, and punitive damages as appropriate; and

B. Enjoining the Counter-Defendants from conducting such violative activity in the future; and

C. Granting such other relief as the Court may deem appropriate.

## COUNT 15

### VIOLATION OF N.J. RULES R. 4:30A, R. 4:5-1, R. 2-5-6(c)(I)(E) AND R. 4:64-1(a)(3) AND (a)(3)

166. Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "165", inclusive, with the same force and effect as though more fully set forth herein at length.

167. Counter-Defendants filed their Complaint in Foreclosure, falsely certifying "the matter in controversy is not the subject of any action pending in any other court...." (R. 4:501).

168. Counter-Defendants filed their Complaint in Foreclosure, falsely certifying "of diligent inquiry" as to the factual assertions therein.

169. These fraudulent certifications in light of the prior and continuing existence of Gurvey v. M&T Bank, Docket No. ESX-L-4337-17, before the Hon. Judge Patrick J. Bartels in the same court exhibits a blatant disregard for the law of New Jersey and its rules of procedure.

170. New Jersey's entire controversy doctrine, embodied in R 4:30A, requires a litigant to present "all aspects of a controversy in one legal proceeding." *Hobart Bros. Co.*, 354 N.J. 240. Breach of that rule, and fraudulently certifying that it has been satisfied, demands dismissal and the awarding of costs, sanctions, and disciplinary proceedings against the offending parties and their attorneys.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate damages,

56

under the Fifteenth Count of the Countercomplaint including, but not limited to:

A. Dismissal, with prejudice, of M&T BANK's Complaint in Foreclosure such that Plaintiff takes nothing by way of its Complaint in Foreclosure;

B. Requiring that the Counter-Defendants pay compensatory damages, attorney's fees and costs and experts' fees, and punitive damages as appropriate;

C. Enjoining the Counter-Defendants from conducting such violative activity in the future; and

D. Granting such other relief as the Court may deem appropriate.

## COUNT 16

# VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 USC 1961-68, ET SEQ. TREBLE CIVIL DAMAGES FOR DAMAGES TO PROPERTY

171.    Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "170", inclusive, with the same force and effect as though more fully set forth herein at length.

172.    The Racketeer Influence and Corrupt Organizations Act, 18 USC §§ 1961-68, et seq., makes it unlawful for a person employed by or associated with an enterprise that affects interstate commerce to conduct or participate in the conduct of an enterprises' affairs through a pattern of racketeering activity, which means a plausible scheme or artifice to defraud.  18 USC 1962 (c).  The statute provides a civil remedy that allows an individual to recover treble damages for injuries to that person's business or property sustained by reason of a RICO violation. 18 USC 1964(c).  *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014).

173.    In the instant filing, Gurvey Counterclaimants allege numerous injuries to
property as a result of counter-defendants' RICO violations.  Gurvey had to defend themselves
again an unlawful foreclosure action based on a fraudulent declaration filed by counter-
defendants including debt collectors Aimutis and principal Schiller Knapp, Lefkowitz & Hertzel,
LLP.  Gurvey had to incur additional costs, charges, fees, and forfeiture of tax refunds
unconditionally them from potential liability to Montclair Township based on counter-
defendants alleged aiding and abetting Montclair officers and interfering with Gurveys' tax
refund and tax interest rights.  None of these damages are speculative uncertain or undefined.

174.    Counterclaimants have suffered further delay in the Tax Court litigation, further
harassment from Montclair officers, and also lost a buyer from their home who offered
$865,000 to purchase in July 2018.

175.    Under RICO, injuries to property must demonstrate least some pecuniary loss
flowing from property injuries to confer relief and the right to recover treble damages.

176.    Counter-defendants in this lawsuit are attempting to fraudulently deprive
Counterclaimants of their home through an unlawful and fraudulent foreclosure complaint,
after interfering with Gurveys' tax refund rights by aiding and abetting Montclair Township and
breaching a modification contract, fully performed, relied upon and enforceable against
counter-defendant M&T.

177.    In the current Superior Court lawsuit, Counter-defendant M&T has also
unlawfully withheld all discoverable documents  for 18 months pertaining to its employees and
agents communications with Montclair officers and M&T's alleged advancement of tax
payments at M&T's own risk after it breached the modification contract.

178.    The object of the alleged scheme to defraud was to obtain unlawful title to
Counterclaimants' home and assist Montclair further delay and get out of paying Gurveys for
tax refunds and interest unconditionally due them since Montclair unilaterally entered
fraudulent increases and overassessments during the forced quarantine of Gurveys' home.  The
home is real property properly the subject of RICO treble damage claim and all of the loss of a
purchaser for the home, the loss of overdue property tax refunds and interest, and attorney's
fees and court costs related to these injuries are recoverable against counter-defendants.
*Sedima S.P.R.L. v. Imrex Co*., 473 US 479, 496, 105 S. Ct. 3275, 87 L. Ed 2d 346 (1985); *Isaak v.
Trumbell Sav. & Loan Co*., 169 F.3d 390, 397 (6th Cir. 1999). *Slorp v. Lerner, Sampson & Rothfuss*,
587 Fed. Appx. 249, 263 (6th Cir 2014)

179.    Because Counterclaimants' property related injuries were caused by counter-
defendant's ongoing separate breaches of the HCBS mortgage contract, violations of multiple
federal statutes,  M&T's separate breach of the modification contract it agreed to and
performed, and M&T's subsequent unlawful withholding of all discoverable communications
with Montclair Township in the existing Superior Court lawsuit, all these acts of harassment
establish Counterclaimants' recoverable properly injuries per se.

180.    To establish a pattern of racketeering activity, the plaintiff must also allege at
least to related acts that amount to or pose a threat of continued criminal activity. *Brown v.
Cassens Transportation Co.*, 546 F. 3d 347, 354 (6th Cir. 2008).

181.    The RICO statute enumerates dozens of crimes that constitute racketeering
activity.  18 USC 1961(1).  Among these crimes are mail fraud and wire fraud (18 USC §§1341,
1343) that consists of a scheme or artifice to defraud, use of the mails or interstate wire

communications in further of the scheme and intent to deprive a victim of money or property. *United States v. Turner*, 465 F. 3d 667, 680 (6th Cir. 2006); *United States v. Daniel*, 329 F. 3d 480, 485 (6th Cir. 2003). A scheme to defraud is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations or promises. *United States v. Faulkenberry*, 614 F. 3d 573, 581 (6th Cir. 2010); *Slorp v. Lerner, supra*, at 587 Fed. Appx. 264-265. There is no question that is what counter-defendants M&T and debt collectors engaged in here to injure the Gurveys.

182.    In the instant lawsuit, employees and debt collectors of Counter-defendant, M&T, qualify as an enterprise within the meaning of 18 USC 1962(c ) which includes any individual, partnership, corporation, association or other legal entity engaged in mail fraud and wire fraud, who here not only defrauded Gurvey Counterclaimants by filing the instant complaint, but aided and abetted Montclair Officers engage in continuing tax fraud in NJ and then lied to the Federal as part of a coverup.  18 USC §1001 (a)(2).

183.    Counter-defendant M&T has at least three structural features:  a purpose, relationships among those associated with the enterprise including its debt collectors, and longevity sufficient to permit pursuit of the enterprises purpose. *Boyle v. United States*, 56 US 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate treble civil damages, under the Sixteenth Count of the Countercomplaint including, but not limited to:

A. Dismissal, with prejudice, of M&T BANK's Complaint in Foreclosure such that Plaintiff takes nothing by way of its Complaint in Foreclosure;

B. Requiring that the Counter-Defendants pay treble civil damages for Counterclaimants real property-related injuries and losses including lost tax refunds, tax interest and a lost buyer

for their home, attorney's fees and costs and experts' fees, and punitive damages as appropriate;

C. Enjoining the Counter-Defendants from conducting such violative activity in the future; and

D. Granting such other relief as the Court may deem appropriate.

# COUNT 17

# FALSE STATEMENTS IN A FEDERAL INVESTIGATION
## VIOLATIONS OF 18 USC 1001(a)(2)

184. Counterclaimants repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "183", inclusive, with the same force and effect as though more fully set forth herein at length.

185. On or about November 5, 2018, M&T BANK in a matter within the jurisdiction of the Consumer Financial Protection Bureau ("CFPB"), knowingly and willfully made a materially false, fictitious and fraudulent statement and representation, to wit, that AMY GURVEY was an unauthorized third party to the complaint she had filed with the CFPB seeking review of the actions of M&T BANK and that M&T BANK did not have to answer.

186. This false statement as part of a RICO scheme and coverup outlined in Count 16, *supra*, constitutes a separate violation of Title 18, United States Code, Section 1001(a)(2), in furtherance of the pattern of racketeering activity demonstrating counter-defendants' culpability and bad faith.  18 USC 1001(a)(2) is a criminal statute.

**WHEREFORE**, Counterclaimants pray this Honorable Court grant appropriate treble civil damages, under the Seventeenth Count of the Countercomplaint including, but not limited to:

61

A. Dismissal, with prejudice, of M&T BANK's Complaint in Foreclosure such that Plaintiff takes nothing by way of its Complaint in Foreclosure;

B. Requiring that the Counter-Defendants pay treble civil damages for Counterclaimants real property-related injuries and losses including lost tax refunds, tax interest and a lost buyer for their home, attorney's fees and costs and experts' fees, and punitive damages as appropriate and as allowable for RICO violations, with counter-defendant M&T's criminal statutes violations demonstrative as additional acts in furtherance of the enterprise's purpose, i.e., to deprive Counterclaimants of their home and further delay Montclair Township's payment of overdue tax refunds and interest;

C. Enjoining the Counter-Defendants from conducting such violative activity in the future; and

D. Granting such other relief as the Court may deem appropriate.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Counterclaimants respectfully pray this Honorable Court dismissing the complaint with prejudice and grant Gurvey Counterclaimants the relief requested under Counts 1 through 17 herein, and such other relief as the Court may deem appropriate.

## V. CERTIFICATION

We, H. Scott Gurvey and Amy Gurvey, Plaintiffs *pro* se, of full age, hereby certify and state:

We hereby certify that the foregoing statements made by us are true. We are aware that if any of the foregoing statements made by us are willfully false, we are subject to punishment.

Dated: December 30, 2018

H. Scott Gurvey, Plaintiff *pro se*

Amy Gurvey, Plaintiff *pro se*

63

## CERTIFICATE OF SERVICE

H. Scott Gurvey, the Co-Counterclaimant *Pro Se* herein and over the age of 18, certifies that on December 31, 2018 he served a true and accurate copy of Plaintiffs' Answer and Counterclaims upon Counter-defendants M&T Bank, Philip Aimutis, Jr and principal Schiller, Knapp, Lefkowitz & Hertzel, LLP, by depositing a true and accurate copy of same, postage prepaid, in a mailbox duly maintained by the U.S. Postal Service.

The envelope was addressed as follows:

Philip Aimutis, Jr., Esq.
Schiller, Knapp Lefkowitz & Hertzel, LLP
30 Montgomery Street Suite 1205
Jersey City, NJ 07302

Elliot "Emeltzer" Smeltzer, Esq.
Schiller Knapp Lefkowitz & Hertzel, LLP
950 Loudon Road Suite 109
Latham, NY 12110

H. Scott Gurvey, Counterclaimant *pro se*